STATE, RESPONDENT, *v.* ALLEN, APPELLANT.

(No. 2,324.)

(Submitted October 4, 1906.  Decided October 22, 1906.)

*Criminal　Law—Grand　Larceny — Information — Evidence—*
*Instructions—Circumstantial　Evidence—Conspiracy.*

Grand Larceny—Information—Requisites—Felonious Intent.

1. An information charging the defendant with grand larceny, in that he "willfully, unlawfully and feloniously, and with the intent then and there to steal, did take, steal, carry and drive away" a certain mare and colt, is not open to the objection that it fails to allege that the taking was done with felonious intent,—since the term "feloniously" imports criminal intent,—but is sufficient both under the common law and under Penal Code, section 880, as amended by Session Laws of 1897, page 247.

Same—Conspiracy—Evidence—Declarations.

2. While the acts and declarations of a co-conspirator done and made in furtherance of a common design are admissible against all the other parties to the conspiracy, whether done or made in their presence or with their knowledge or not, they must have occurred after the conspiracy has been formed and before its accomplishment or abandonment.

Same—Conspiracy—Evidence—Declarations of Co-conspirators.

3. Prior to the formation of a conspiracy for the stealing and disposing of horses entered into between defendant, one M. and one S., the latter without defendant's knowledge urged M. to buy defendant's ranch and pay for it with stolen horses, to be disposed of by defendant. Subsequently such an arrangement was made and the defendant included in the agreement. *Held,* that the conversation between M. and S. was inadmissible against defendant, in a prosecution for grand larceny, inasmuch as it did not appear that defendant knew of the proposition made to M. by S., and that therefore he could not be bound by anything said by them before he had become a party to the conspiracy.

Same—Conspiracy—Evidence—Declarations—Time and Place.

4. In a prosecution for grand larceny, it is not necessary that a witness testifying to declarations of co-conspirators should be required to fix the time and place of their occurrence and give the names of those present before his statements can be admitted in evidence, such rule applying only to cases where it is sought to impeach a witness when under examination.

Same—Evidence of Other Crimes—Admissibility.

5. Where, in a prosecution for grand larceny, the evidence showed a conspiracy under which horses stolen by defendant's co-conspirators were to be disposed of by him for their mutual benefit, evidence of larcenies by his confederates other than the one for which he was on trial was properly admitted as tending to establish the conspiracy and to show intent on the part of the defendant, it appearing that

he disposed of the animals and that the brands on them had been changed prior to their disposal.

Same—Conspiracy—Evidence—Possession of Stolen Property.

6.   The possession of stolen horses by defendant, charged with grand larceny, soon after they were stolen was an incriminating fact which, while not sufficient of itself to warrant conviction, tended to establish a conspiracy, alleged to have been entered into between him and his confederates, when taken in connection with the fact that the brands on the animals had been changed and that he received from his confederates, and disposed of, horses with many different brands without inquiry as to where they came from.

Same—Instructions—Felonious Intent.

7.   An instruction given in a prosecution for grand larceny defining that crime substantially in the words of the statute, but omitting to supplement such definition by a statement that the taking of the property by defendant must have been done with a felonious intent was erroneous, and the casual use of the term ''felonious'' in a subsequent paragraph of the charge to the effect that the defendant should be acquitted if the jury were not satisfied that he ''had something to do with the felonious taking of the property'' did not cure the defect.

Same—Impeachment—Value of Evidence.

8.   Contradictions or inconsistencies in the testimony of a witness which grow out of inadvertence, inattention or defect of memory are of less value for impeachment purposes than when they are the results of statements shown to be willfully false.

Same—Contradictions—Value of Evidence.

9.   Where contradictions in a witness' testimony arise out of a willful perversion of the truth, the jury may disregard the whole of it, except so far as it is corroborated in other particulars by other credible evidence in the case.

Same—Instructions—Contradictions in Evidence—Invasion of Province of Jury.

10.   While the jury may inquire whether contradictions in a witness' testimony are only apparent or due to lapse of memory or the like, or to willful perjury, and determine its weight accordingly, it is error in a criminal case to instruct them that ''prominent and striking'' contradictions should be attributed to deliberate perjury rather than to the ordinary infirmities of mankind, in that such a statement invades the province of the jury.

Same—Instructions—Witnesses—Invasion of Province of Jury.

11.   An instruction submitted to the jury in a criminal prosecution, that where witnesses to the same transaction perfectly and entirely agree on all points connected with it, a suspicion of practice and concert is engendered and should to this extent be discredited, is an invasion of the province of the jury and erroneous.

Same—Instructions—Circumstantial Evidence—Value.

12.   The trial court in charging the jury in a criminal case as to the value to be given to circumstantial evidence, should include a statement that conviction should follow only if the circumstances are such as to satisfy their minds of defendant's guilt beyond a reasonable doubt to the exclusion of every other reasonable hypothesis, and should not instruct that they should convict if such evidence convinces their ''guarded judgment.''

Same—Instructions—Circumstantial Evidence—Invasion of Province of Jury.

13. *Semble:* It would seem that an instruction in a criminal prosecution that circumstantial evidence is in many cases quite as convincing as direct and positive evidence, is subject to the criticism that it comments on the weight of the evidence and invades the province of the jury.

Same—Instructions—Assumption of Facts—Principal—Accomplice.

14. For the district court to assume, in a criminal prosecution, in its charge to the jury, that a certain person was an accomplice of the defendant, was an assumption of the defendant's guilt of the crime charged and erroneous, since. it implied that a crime had been committed and that there was a principal.

Same—Instructions—Definition of Principal.

15. An instruction submitted in a prosecution for grand larceny, that a person who "advised *or* encouraged" another in the commission of a crime is to be considered a principal, instead of "advised *and* encouraged," the words used in section 41 of the Penal Code in defining the term "principal," was not prejudicially erroneous, the words "advised" and "encouraged" being synonymous in popular meaning.

Same—Instructions—Definition of Principal.

16. *Held,* in a criminal appeal, that the use of the disjunctive "or" in defining a principal as one who "aids *or* abets" in the commission of a crime instead of the conjunctive "and," as prescribed by Penal Code, section 41, was erroneous, because the word "aid" does not imply guilty knowledge or felonious intent, while the term "abet" does include knowledge of the wrongful purpose of the perpetrator of, and counsel and encouragement in, the crime.

Same—Instructions—Duty of Finder of Property.

17. Where in a prosecution for grand larceny no facts or circumstances are proven justifying the inference that the property alleged to have been stolen had been found by defendant or anyone else, an instruction as to the duty of a person finding property to restore it to the owner or to make a reasonable effort to do so is inapplicable and should not be given.

Same—Instructions—Definition of Crime.

18. An instruction embodying the provisions of sections 20 and 21 of the Penal Code upon the presence of joint operation of act and intent in order to constitute a crime, should be given in every criminal prosecution, especially when requested by defendant.

Instructions—Where Refusal not Error.

19. Where requested instructions are fairly covered by those given, a refusal of those asked is not error.

*Appeal from District Court, Gallatin County; W. R. C. Stewart, Judge.*

A. W. ALLEN was convicted of the crime of grand larceny, and appeals from the judgment of conviction and an order denying his motion for a new trial. Reversed and remanded.

*Mr. J. L. Staats,* and *Mr. George D. Pease,* for Appellant.

*Mr. Albert J. Galen,* Attorney General, and *Mr. W. H. Poorman,* Assistant Attorney General, for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The defendant, having been convicted of the crime of grand larceny, has appealed from the judgment of conviction and an order denying him a new trial. He challenges the integrity of the judgment on the grounds: (1) that the information does not charge the offense of grand larceny; (2) that the verdict is contrary to the evidence; (3) that the court committed prejudicial error in admitting certain evidence; and (4) that the defendant was prejudiced by certain instructions submitted to the jury, and the court's refusal to submit others requested.

1. The information charges that the defendant committed the crime of grand larceny in Gallatin county on or about October 10, 1905, "in that he then and there willfully, unlawfully and feloniously, and with the intent then and there to steal, did take, steal, carry, and drive away," etc., a certain bay mare and colt of the personal property of one Dan. Inabnit, describing them, contrary to the form, etc. The contention is made that the charge is fatally defective in that it fails to allege that the taking was with felonious intent. In this contention defendant is wrong. Leaving out the clause "and with the intent then and there to steal," the charge would read: "Willfully, unlawfully, and feloniously did take, steal, carry, and drive away," etc. The term "feloniously" imports criminal intent, and furnishes exactly the element which counsel say is wanting. The addition of the clause which we have omitted does not take from or add to the substance of the charge, which we think is a sufficient statement of the intent with which the taking was done, both at common law (Wharton's Precedents, 415), and under our statute (Penal Code, sections 880 and 883, as amended by Session Laws of 1897, page 247).

In construing section 880, *supra,* this court, in *State* v. *Rechnitz,* 20 Mont. 488, 52 Pac. 264, held an instruction erroneous which failed to tell the jury that a criminal intent was necessary to constitute the crime of grand larceny. It was also held in the same case, however, that it was not necessary to use the word "feloniously" in describing the crime, but that it was enough if the criminal intent expressed in that technical word is included in appropriate terms. The same general principle applies to pleading. While the important distinctions between larceny and embezzlement have been destroyed by our statute making both larceny at common law and embezzlement larceny, the general principle of pleading has not been changed. (*State* v. *Dickinson,* 21 Mont. 595, 55 Pac. 539.) If the information charges in appropriate terms the felonious or criminal intent, it is not necessary to use the technical word "feloniously." In this case, however, we see that this technical term was used as applied to the taking, and hence the felonious intent is sufficiently alleged.

2. It is earnestly contended that the defendant was convicted upon the uncorroborated testimony of an accomplice, and, therefore, that under section 2089 of the Penal Code, the judgment cannot stand. It is true that the only direct evidence against the defendant was given by one Maxwell, who testified that the defendant, one Sloan, and himself entered into an agreement under the terms of which Maxwell and Sloan were to steal horses from the range in Gallatin county, and turn them over to defendant, who undertook to dispose of them for the mutual benefit of all. Since the judgment and order must be reversed on other grounds, we shall refrain from discussing the evidence further than to say that we think the independent corroborative evidence tending to connect the defendant with the commission of the larceny charged, together with the evidence of the accomplice, sufficient to make out a case to go to the jury on the question of his guilt.

3. Maxwell stated in his testimony that on the day before the agreement was entered into, he assisted Sloan in driving

some horses to the house of the defendant, which Sloan intended to turn over to the defendant to be by him delivered to one Stevens in part payment for a ranch which defendant and Sloan had agreed to purchase from Stevens. After some conversation between Sloan and the defendant, it was agreed between them that Sloan might be released from carrying out his part of the agreement with Stevens, and that its performance would be undertaken by the defendant. Thereupon a proposition was made to Maxwell to buy from the defendant the ranch where the latter was then living. Maxwell at first demurred, saying that he had no money. Defendant told him that he would take payment in horses. Maxwell and Sloan then went out to look over the place, leaving defendant at the house. Sloan seemed anxious to have the trade made; so, while he and Maxwell were together, he urged Maxwell to buy the place, telling him that he had been doing business with the defendant for a long time, that he could be trusted, that Maxwell could steal horses enough to make the payments, and that defendant would take and handle them for him. It is apparent from the use of the expression "doing business," in the testimony of this witness, that he intended to be understood as saying that Sloan meant that he had been stealing horses for a long time, and that defendant had been handling them for him. Upon their return to the house an agreement was made between the defendant and Maxwell, that Maxwell would take the place, that he and Sloan would steal horses from the ranges in the southern part of Gallatin county, and that the defendant would receive them and allow a fixed price for them of $25 each for all of a certain grade, each of the parties to the agreement to have one-third of the proceeds. Later the defendant agreed to take all the horses brought to him by Maxwell and Sloan, sell them and divide the proceeds, giving Maxwell credit for his share on the price of the ranch. The horses driven to defendant's place by Sloan and Maxwell on their first visit were taken away by Sloan, and, so far as appears, defendant took no part in the disposition of them. Nor did Maxwell after-

ward have anything to do with them. So that, even if a conspiracy theretofore existed between defendant and Sloan, the result of this meeting was an abandonment of it and the formation of a new agreement for a different purpose. The court overruled defendant's objection to the testimony of the witness so far as it detailed the conversation had between him and Sloan out of the hearing of the defendant.

The contention is made that the admission of this evidence was prejudicial error. We think it was. There is no rule better settled than that the acts and declarations of a co-conspirator done and made in furtherance of a common design are admissible against all the other parties to the conspiracy, whether done or made in their presence or with their knowledge or not. (*State* v. *Byers,* 16 Mont. 565, 41 Pac. 708; *Pincus* v. *Reynolds,* 19 Mont. 564, 49 Pac. 145; Wigmore on Evidence, 1079; 8 Cyc. 679.) It is founded upon the principle that when two or more persons are associated together to accomplish some unlawful purpose, each one is, for the time being, the agent for the others and binds them by his acts and declarations done and made in furtherance and in aid of the common purpose. But to be admissible, the acts and declarations must have occurred during the life of the conspiracy, that is, after it has been formed and before its accomplishment or abandonment.

Applying the rule, with these limitations, to the evidence in question, it should have been excluded; for, admitting, for the sake of argument, that Sloan and Allen, the defendant, had theretofore been engaged in a scheme to steal horses and sell them for their mutual profit, Maxwell was not a party to the scheme, and, therefore, was not a co-conspirator with Allen in it. It was only after the contract of purchase of the Stevens' place had been abandoned by Sloan that the arrangement for the purchase from defendant by Maxwell was broached, and by its completion only did Maxwell become associated with them. Up to the time of this visit to Allen's place by Maxwell in company with Sloan, Maxwell and Allen had been strangers. So far as the proof shows, they had had no connection with each

other in any sort of enterprise. Nor does it appear that Allen knew that Sloan intended to make any such proposition to Maxwell as he did make. Therefore the conversation between Maxwell and Sloan was had before the inception of the criminal purpose, and, though it had reference to this criminal purpose which was afterward formed and carried out, at the time it was had, Allen was not a party to it, and therefore could not be bound by anything said by them.

4. Like objections were made to other conversations had between Maxwell and Sloan out of the presence of the defendant, after the agreement was made. These conversations all had reference to the purpose of the conspiracy, and occurred while Maxwell and Sloan were hunting for horses on the range, which they intended to, and subsequently did, deliver to defendant or from which he made selections. They were therefore competent, and were properly admitted in evidence.

5. Further objection was made to all of these conversations on the ground that the witnesses testifying to them were not first required to fix the time and place of their occurrence and the persons present. The declarations of a party against his interest concerning the subject of the controversy are always admissible against him as substantive evidence in aid of his adversary. It is not necessary that the circumstances of time, place, etc., should be stated to render them competent. The rule invoked by counsel applies only to cases where it is sought to impeach a witness who is undergoing examination. In such case it is but fair to the witness that his attention should be called to the time and place and attendant circumstances so that he may have an opportunity to explain. The statute declares that this must be done (Code Civ. Proc., sec. 3380). But one way to secure advantage of the declarations of a party is to prove them as substantive evidence by witnesses who know of them, leaving it to his counsel to bring out the attendant circumstances upon cross-examination, and thus enable the party himself to explain or contradict it.

6. It is argued that the court was in error in admitting evidence of other larcenies. It appears, however, that they were all committed by Sloan and Maxwell within three or four weeks subsequent to the date of their first visit to defendant's place; and in view of the fact that the brands on some of the animals were subsequently changed, and that most of them were received and disposed of by defendant, the evidence was competent as tending to establish the conspiracy, and also to show intent on the part of the defendant. The possession of the property by the defendant soon after it was stolen was itself an incriminatory fact, not sufficient, standing alone, to warrant conviction; nevertheless the fact of such possession, coupled with the changed brands, knowledge of which he must have had, and, further, the fact that he received, at different times, animals with many different brands, without inquiry as to whence they came, tended in some measure, at least, to support the inference that a conspiracy existed; and, since the different larcenies were committed as parts of the scheme, evidence of them was competent, because every act done in furtherance of it could properly be proved as part of it, even if the proof of it tended to establish a distinct crime. (*State* v. *Stevenson,* 26 Mont. 332, 67 Pac. 1001.)

7. In the charge to the jury, the court defined grand larceny substantially in the words of the statute, as follows: "The definition of grand larceny applicable to this case is as follows: Every person who, with the intent to deprive or defraud the true owner of his property or of the use and benefit thereof, or to appropriate the same to the use of the taker or of any other person, takes from the possession of the true owner any mare, gelding, or colt, is guilty of grand larceny." (Instruction No. 2.) The defendant finds no fault with this definition, but contends that, since a taking of personal property from the owner thereof cannot be a crime unless it be done with felonious intent, the definition should have been supplemented by an additional statement telling the jury in appropriate terms that

the taking must have been done with such intent, or there could be no conviction.

In *State* v. *Rechnitz, supra,* the instruction submitted to the jury used substantially the language employed by the statute. Counsel for appellant in that case made the same contention as is made here, and this court, upon a review of the authorities, both text-writers and adjudicated cases, sustained the contention on the ground that whatever the definition given to the crime of larceny by statute may be, the criminal intent is a necessary ingredient of it, and, if not expressed therein in *appropriate* terms, must be imported into it by the court in applying it to particular cases. Otherwise, every taking of personal property from the possession of the owner, with the intention to deprive him of it, would fall within the purview of the statute, and would be larceny. A sheriff taking it under process or anyone taking it under a *bona fide* but mistaken claim of ownership, if yet with intent to deprive the owner of it, could under the terms of the statute be convicted. Under the authority of that case, which we think was correctly decided, the contention of defendant must be sustained. There was no other instruction submitted sufficiently explicit to cure the defect. The word "felonious" appears in the charge but once, and that in a subsequent paragraph in which the distinction between the crimes of grand larceny and knowingly receiving stolen property is pointed out. It occurs in the sentence: "If you are not satisfied from the evidence in this case beyond all reasonable doubt, that the defendant had something to do with the felonious taking of the property * * * it is your duty to acquit." This casual, incidental use of the technical term was not intended, nor could it have been understood by the jury to import into the formal definition of the crime theretofore given the necessary modification to make it a correct statement of the law.

8. Among other instructions as to the credibility of witnesses, not complained of by the defendant, the court gave the following: "The court instructs that partial variances in the testimony of different witnesses on minute and collateral points are of

little importance unless they be of too prominent and striking a nature to be ascribed to mere inadvertence, inattention, or defect of memory; that it so rarely happens that witnesses of the same transaction perfectly and entirely agree on all points connected with it that any entire and complete coincidence in every particular, so far from strengthening their credit, only indirectly engenders a suspicion of practice and concert; and that in determining upon the credence to be given to testimony by the jury the real question must always be whether the points of variance and discrepancy are of so strong and decisive a nature as to render it impossible or difficult to attribute them to the ordinary sources of such variance, viz., inattention or want of memory.'' (Instruction No. 10.)

Irrespective of the doubtful propriety of giving such an instruction in any case we think this invades the province of the jury in two respects. In the first place a witness may always be impeached by evidence tending directly to contradict his story (Code Civ. Proc., sec. 3379), or indirectly by showing that he has made at other times statements inconsistent with it (Code Civ. Proc., sec. 3380); and the contradiction or inconsistency is of more or less value as an impeachment, according as it is upon an important or unimportant material statement in the story. If it grows out of inadvertence, inattention, or defect of memory, it is of less value than when it is the result of a statement shown to be willfully false. Contradictions arising out of defect of memory, and the like, do not ordinarily destroy the credit of the witness' story as a whole, but only so far as the story is manifestly inaccurate. But where it arises out of a willful perversion of the truth, the jury may disregard the whole of it, except so far as it is corroborated in other particulars by other credible evidence in the case. But it is a fact commonly observed, that the variations in the stories of witnesses, even in the most important particulars, are as often due to inattention, inadvertence and failure of memory, as to willful perjury; and while it is eminently proper for the jury to inquire whether the contradiction is only apparent or due

to lapse of memory, or the like, or to willful perjury, and determine its weight accordingly, it is a clear invasion of the province of the jury for the court to say that "prominent and striking" contradictions should be attributed to deliberate perjury, rather than to the ordinary infirmities of mankind.. The jury are the exclusive judges of the credibility of the witnesses, and should be left, under proper instructions, to determine from what cause the contradictions and inconsistencies therein arise, and to weigh the evidence accordingly.

Nor is it a correct statement of the law that coincidence in all particulars in the stories of two or more witnesses always casts suspicion upon their evidence. This is often the case, but the rule is not of universal application. Two such stories may coincide literally, and yet be true. It is therefore manifestly an invasion of the province of the jury for the court to say to them that such evidence must be viewed with suspicion and to this extent discredit it by expressing an opinion upon it. It is for the jury to examine the stories and say whether they are true. We have not found a similar instruction approved by any court or text-writer, and deem it clearly open to the fault found with it by appellant.

In this connection we may observe that it is far safer for a trial court to make use of instructions generally approved by the courts, rather than to risk the danger of invading the province of the jury by formulating new ones. The expression of this instruction is confused and contradictory to such an extent that it is hardly possible that a jury of ordinary men would be able to understand exactly what the court did mean by it.

9. Many other errors are assigned upon the instructions submitted. We briefly refer to such of them as require notice. Upon the value of circumstantial evidence the jury were instructed substantially, that such evidence should be regarded by the jury in all cases; that it is in many cases quite as convincing as direct and positive evidence; that when it is strong and satisfactory the jury should so consider it, neither enlarging nor belittling its force; that it should have its just and fair weight;

and that if when taken as a whole and fairly and candidly weighed, it convinces the guarded judgment the jury should convict. The fault found with this statement is that it is misleading, in that it tells the jury that if such evidence convinces the guarded judgment they should convict, whereas, if the evidence convinces the jury of defendant's innocence, or raises a doubt of his guilt, he should be acquitted. Reading this paragraph with the rest of the charge, we do not think the jury could have been misled; yet, it should have stated that the jury should convict only if the circumstances were of such a character as to satisfy the minds of the jury of the guilt of the defendant beyond a reasonable doubt to the exclusion of every reasonable hypothesis other than the guilt of the defendant.

The instruction submitted was taken substantially from section 729 of Hughes' Instructions to Juries and seems to find approval in *State* v. *Elsham,* 70 Iowa, 531, 31 N. W. 66. In copying it, however, the instruction was altered so as to make it say to the jury that they should under such circumstances convict, whereas the text correctly states: "And if, when it (such evidence) is all taken as a whole and fairly and candidly weighed, it convinces the guarded judgment, the jury should act upon such conviction"—quite a different proposition. We question, also, whether it would not have been better to omit the second sentence of the paragraph as coming perilously near invading the province of the jury by commenting upon the weight of the evidence. But this point was not made, and we do not decide it.

10. Paragraphs 15 and 16 of the charge assume that Maxwell was an accomplice of the defendant. The assumption was clearly erroneous. To assume that there is an accomplice is an assumption that a crime has been committed and that there is a principal; for there can be no accomplice without a crime and a principal. Therefore, the assumption that Maxwell was an accomplice was an assumption of defendant's guilt of the crime charged. Other portions of the charge fully and fairly submitted the question of complicity to the jury, and they may

not have been misled by the assumption, but the error should be avoided on another trial.

11. Paragraph 25 of the charge is as follows: "All persons concerned in the commission of a crime, whether they directly commit the act constituting the offense, or aid and abet in its commission, or even if not present at its commission, have advised or encouraged its commission, are principals in the crime so committed; so, if you find from the evidence, beyond a reasonable doubt, that Roland T. Sloan or Ross Maxwell or the two together stole the horses in question with or without others, and that they were in such act in any way aided or abetted by the defendant Allen in the commission of the crime the defendant knowing the nature and purpose of the acts so being committed by said Sloan and Maxwell, or either of them, or that the defendant in any way knowingly advised or encouraged them, or either of them, in the commission of such crime the defendant is guilty, and you should so find by your verdict."

The adverse criticism made of this statement is that the use of the disjunctive "or" instead of "and" between the words "advise" and "encourage" is a departure from the statute (Pen. Code, sec. 41), and must, therefore, have been prejudicial. In *State* v. *Geddes*, 22 Mont. 68, 55 Pac. 919, the same substitution of terms was considered somewhat and a doubt was expressed as to whether it was fatal to the instruction. But it is always safer to follow the statute. We do not see how, on principle, however, it makes any particular difference whether the disjunctive or conjunctive particle is used here. The word "advise," in the sense here used, means "to give counsel to; to offer an opinion to, as worthy or expedient to be followed; to recommend as wise and prudent; to suggest as the proper course of action." The term "encourage" means "to give courage to; to incite to action or perseverance." While the terms are not synonymous in a technical sense, in popular usage they are; and it would seem that one who suggests to another that the commission of a crime is wise. or that it is a proper course of action, and the advice so given is followed should very

properly be said, in a popular sense, to have encouraged it. To incite to action also involves the idea of giving advice to the same end. So that, avoiding a strictly technical construction and giving the terms employed a more liberal and popular meaning, which is the correct canon of construction to be applied in such cases, there is no difference in principle between giving advice and giving encouragement, and criminal responsibility should be regarded as attaching to the giver in either case. By the ordinary mind no distinction is drawn between the two.

A more serious objection to the instruction (not noticed by counsel) might have been urged to the use of the disjunctive between the terms "aided" and "abetted." In *People* v. *Dole,* 51 Pac. 945, the supreme court of California, in department 1, held that the use of the disjunctive "or" was not fatal error, because "to the ordinary mind, one who aids or assists in the commission of the crime of forgery is guilty; and this is true, because to such a mind criminality is included as an element in the act of the party aiding or assisting." In the same case, however, in 122 Cal. 486, 55 Pac. 581, the court in bank decided that the use of the disjunctive was prejudicial error. The court said: "The word 'aid' does not imply guilty knowledge or felonious intent, whereas the definition of the word 'abet' includes knowledge of the wrongful purpose of the perpetrator and counsel and encouragement in the crime. The error in the instruction is, therefore, clear, and it cannot be held to be harmless error to instruct a jury that they must convict upon proof of a fact which does not necessarily imply guilt." This case is cited with approval in *People* v. *Compton,* 123 Cal. 403, 56 Pac. 44, upon the same point, and we think the views therein expressed are correct. Aside from the person who actually commits the crime, no person could, under the statute, be guilty of the crime who does not aid *and* abet in it; and a person may aid in it by unconsciously, and therefore innocently, doing some act essential to its accomplishment.

12. In another paragraph of the charge the court instructed the jury as to the duty of a person finding property to restore

it to the owner, or to make a reasonable effort to do so.  This in-struction should not have been given, since there were no facts or circumstances proven. in the case justifying the inference that the animals alleged to have been stolen had been found by defendant or anyone else.  It was not applicable to the facts of the case.

13. Defendant's requested instruction No. 9 should have been given.  It embodies sections 20 and 21 of the Penal Code, and should always be given, especially when requested by the de-fendant.

14. Instruction No. 11, requested, deals with the element of felonious intent.  It is a correct statement of the law applicable to the case and should have been given.  What has already been said on this subject, however, renders further remark unnec-essary.  Most of the other instructions requested and refused were fairly covered by the instructions given.  The remarks heretofore made are sufficient to guide the court on another trial without special discussion of the questions presented and dis-cussed by counsel with reference to them.

Let the judgment and order be reversed and the cause be re-manded for a new trial.

*Reversed and remanded.*

Mr. Justice Holloway concurs.

Mr. Justice Milburn, not having heard the argument, takes no part in this decision.