Coös,
Oct. 5, 1920.

## GUARANTY TRUST COMPANY, *v.* UNITED STATES FIDELITY & GUARANTY COMPANY.

A bond, in consideration of a premium, conditioned to pay the obligees such pecuniary loss as they might sustain by the failure of their treasurer to faithfully perform his duties according to law and defining the rights and duties of the parties, is a contract of insurance; the liability of the obligor is determined by the terms of the contract and not by the common law rules of suretyship.

A condition in such bond that "the employer shall immediately give" the obligor "notice in writing of the discovery of any default or loss hereunder and shall file with" the obligor " his or their claim hereunder" requires notice to be given of only those defaults upon which claim for recovery is based.

Under such contract, the failure of the obligees to notify the obligor of a default not the basis of the obligees' claim but innocently made by their employee's acting in excess of his authority, is not a breach of a condition to notify the surety of the employee's defaults.

In such case, the questions whether in accordance with the contract the obligees exercised a proper supervision over the employee for the prevention of defaults, and whether the obligees made a complete annual inspection of the employee's books and accounts, were for the jury.

Where "immediate notice" is required by a contract the question what constitutes such notice in a particular case is for the jury.

Compliance by bank directors with a requirement of the bank commissioners to personally take up certain notes acquired by the bank through purchase by their treasurer is not a payment or discharge thereof either as to the makers of the notes or as to the surety for the defaults of the treasurer.

A bank chartered as the "Guaranty Trust Company" and authorized to conduct a savings department is sufficiently described in contracts made by it in the name "Savings Department, Guaranty Trust Company" and "Trust Department Guaranty Trust Company."

The erroneous assertion by counsel in argument concerning a fact, undisputed and testified to by one witness, that it was testified to by another witness is not prejudicial.

ACTION, on three bonds given by the defendants as sureties for one Harry P. Brown, the plaintiffs' treasurer. Trial by jury and verdict for the plaintiffs. Two of the bonds were for $15,000 each, in each of which the obligee was described as "Savings Department, Guaranty Trust Company." The third was for $10,000, running to "Trust Department Guaranty Trust Company."

At the close of all the evidence, the defendants moved for a directed verdict and excepted to the denial of their motion; to the refusal to give certain instructions requested by them; to instructions which were given; and to a portion of the argument of plaintiffs' counsel.

The evidence relevant to the exceptions appears in the opinion. Transferred by *Kivel*, C. J., from the September term, 1919, of the superior court.

*Sullivan & Daley* and *Goss & James* (*Mr. Sullivan* and *Mr. Goss* orally), for the plaintiffs.

*George F. Rich* and *Streeter, Demond, Woodworth & Sulloway* (*Mr. Sulloway* orally), for the defendants.

PARSONS, C. J.    The contract sued is one of insurance.    In consideration of a premium paid to it by the plaintiffs, the defendants agreed to pay them such direct and pecuniary loss not exceeding the amount of the bond as the plaintiffs might sustain by the failure of one Harry P. Brown to faithfully perform in accordance with the laws of New Hampshire the duties devolving upon him in the course of his employment by the plaintiffs.    The plaintiffs offered evidence tending to prove that Brown did not so perform and their consequent pecuniary loss.

As the rights of the parties are defined by the written contract into which they have entered, the questions raised are determined by construction of the terms of the policy.    The defendants stand not as sureties but as contractors.    *American Surety Co.* v. *Pauly,* 170 U. S. 133; Richards Insurance, *p.* 656.    The case does not involve the rights of sureties at common law, but the question is what was the agreement of the parties.

The policy of insurance, or bond, contained the following among other stipulations: "This Bond is issued . . . subject to the following conditions and provisions: . . . that the Employer shall immediately give the Company notice in writing of the discovery of any default or loss hereunder, and shall file with the Company his or their claim hereunder, with full particulars thereof, as soon as practicable thereafter; . . . that the Employer shall observe or cause to be observed due and customary supervision over the Employee for the prevention of default; and if the Employer shall at any time during the currency of this bond condone any act or default on the part of the Employee which would give the Employer the right to claim hereunder, and shall continue the Employee in his service without notification to the Company, the Company shall not be responsible hereunder for any default of the Employee which may occur subsequent to such act or default so condoned; that there shall be a com-

plete inspection of the accounts and books of the Employee on behalf of the Employer at least once in every twelve months from the date of this bond, such supervision includes examination of all cash and securities which the Employee shall have custody or charge of."

The defendants base their claim to a directed verdict and their exceptions to the refusal of their requests for instructions and to the instructions given under these conditions upon the following propositions:

(1) The plaintiffs failed to notify the company of Brown's defaults as required by the bonds,

(2) They did not exercise proper supervision over Brown,

(3) They failed to make a complete annual inspection of Brown's books and accounts,

(4) They permitted Brown to act unlawfully in the management of the affairs of the bank,

(5) They failed to notify the defendants of Brown's dishonest transactions.

The argument has been general in support of these propositions without reference to the specific language of the various requests and instructions. As this seems a convenient method of discussing the legal questions presented, the path indicated by counsel is now followed.

It is obvious that each of the propositions present questions of fact properly to be submitted to the jury, as they were, if the plaintiffs presented any evidence upon which a conclusion favorable to them could be found.

Brown's defalcation consisted in paying out funds of the bank upon worthless notes which he duly entered upon the books of the bank without authority from or knowledge of the bank directors. The notes for convenience of reference have been classified as "Valdez Creek" notes and "personal" notes. The first were loans connected in some way not very clearly defined in the evidence with a mining adventure in Alaska and the second were notes signed by Brown or his relatives. The plaintiffs claimed and their evidence tended to prove that they first knew of Brown's breach of trust June 21, 1918, when the condition of the bank was discovered in the course of an examination by the bank commissioners and communicated to the directors. The administration of the bank was then turned over to the bank commissioners, with an apparent shortage in Brown's accounts of $122,000. It was then thought that by careful manage-

ment much of this sum could be realized from Brown's property and securities; and, both the bank commissioners and the directors being informed by the agent who secured the bond that notice to the defendants at any time within six months was all that was required by the bonds, written notice was not sent to the defendants until October 22, 1918. The condition of the bond required immediate notice to the defendants of any default or loss thereunder. That what is immediate notice under the facts of a particular case is a question for the jury is here too well settled for discussion. *Ward* v. *Maryland Casualty Co.*, 71 N. H. 262, 267 and cases cited. See *Fidelity & Deposit Company* v. *Courtney*, 186 U. S. 342, 346, 347. It is not seriously contended that, if Brown's default was not discovered until June 21, 1918, whether the notice October 22 was a reasonable compliance with the terms of the bond was for the jury, but the main argument to sustain the claim of a breach of this condition of the bond is based upon other facts in evidence.

It appeared that in June, 1917, the directors were informed that Brown had without authority from them discounted and placed in the bank Valdez Creek notes amounting to about $40,000, and that at an earlier date one of the directors had information of a similar transaction. No notice of this was ever given the defendants as the basis of a claim against them and it does not appear they were informed of it by the directors until the matter was brought out in the statement of the details of the claim, November 28, 1918, when at the request of the defendants they were given a transcript of all the transactions of Brown which were disclosed by an exhaustive examination of the books of the bank during his treasurership. There was evidence that all the unauthorized notes of which the directors of the bank had knowledge June, 1917, or before, were paid to the bank before January 1, 1918. The claim in suit is for losses from transactions between January 1, 1918, the date of the last examination by the directors, and the discovery of the defalcation by the commissioners in June, 1918. For loss for any transaction discovered prior to that date the plaintiffs make no claim and it is immaterial whether there was a loss and, if there were, whether the right of recovery under the bonds has been lost by failure to give notice and make claim. This condition of the bond requires notice in writing of the discovery of any default or loss *hereunder* and stipulates as to the filing of claim *hereunder* and plainly contemplates the discovery of a default or loss upon which the obligee claims under the bond.

The notice required is one under which claim is made and of a default covered by the bond. This provision relates clearly to the prosecution of a claim under the bond and under it the only question is whether the notice October 22, of the default or loss discovered June 22, was a reasonable compliance with the terms of the bond. This was for the jury. Whether the evidence relied upon amounted to a breach of another condition is hereafter considered.

The next contention, that the plaintiffs did not exercise proper supervision over Brown, is urged as a breach of the condition that the employer shall observe due and customary supervision over the employee for the prevention of default. Whether they did or not is essentially a question of fact. The jury had before them the evidence of the organization of the bank largely at the instance of Brown who was known as the successful manager of a bank at Conway and as a man of probity and property, while none of the directors had experience in banking and it was clearly for the jury to say whether the directors gave the supervision customary under the circumstances.

Under the following condition it is urged the plaintiffs failed to make a complete annual inspection of Brown's books and accounts. This condition emphasizes the examination of all cash and securities which the employee shall have custody or charge of. There was evidence that once in six months a committee of the directors examined the securities and cash of the bank in Brown's charge and found the same correct. Such an examination was made January 1, 1918, and the securities and cash found to be such as the books called for and no unauthorized loans were discovered. The case discloses no suggestion of inaccuracy or falsification in Brown's bookkeeping. All cash taken from the bank appears to have been accounted for by paper of some sort which Brown without authority from the bank directors substituted for funds of the bank. His method involved some means of securing at least temporary payment of the notes discounted by him shortly before each semi-annual examination so that at the date of each examination he had no such paper to present to the committee. Brown kept a note register as required by law (Laws 1895, *c.* 105, *s.* 6; P. S., *c.* 165, *s.* 9), on which were entered all notes taken by the bank and on which the unauthorized notes were listed by him. It appeared that at the semi-annual examinations the committee compared the securities on hand with a list furnished by Brown and did not themselves draw off a list of the securities remaining in the bank from this register. There is no suggestion that the list furnished by Brown was incorrect or that

any error in it would have been discovered by the examination of the register. The directors were accustomed to approve loans authorized by them by affixing their initials to the notes themselves instead of entering such approval on the register. Examination of the register would not have disclosed the lack of approval and the committee would have had only their recollection of formal approval to rely upon to ascertain whether Brown had in the six months' period discounted paper without authority from the directors. It could be found that more thorough examination would have disclosed Brown's practices and raised more than a suspicion of the honesty of his proceedings, but whether the supervision given by the directors was customary and usual under the circumstances and the reasonable sufficiency of the examination made being questions of fact were properly submitted to the jury.

In June, 1917, the directors discovered that Brown had without authority from them discounted some $40,000 of the Valdez Creek notes. Not having notified the company or made any claim as to loss by this transaction, the plaintiffs cannot recover under the bond therefor as hereinbefore stated. Instead of treating the transaction as a dishonest one, they chose to regard it as merely an honest or mistaken excess of authority by Brown and accepted his agreement to assume the notes. There was evidence that these notes were all paid and taken out before the examination in January, 1918.

The defendants contend that this proceeding was a condonation of a default by Brown and a breach of the condition, releasing them from any liability for any subsequent default. This depends upon whether the directors knew Brown was dishonest in what he did. The defendants did not guarantee Brown's skill but merely his honesty, in the words of the bond that he would not violate the laws of the state. A loss to the bank occasioned by Brown's innocently exceeding his authority was not a loss under the bond. It may be argued that the evidence before the directors in June, 1917, was sufficient to raise a suspicion of his honesty. But there was evidence the directors regarded him as a man of property, skilled in banking matters and abundantly able personally to assume the loans which they criticized. The case fails to disclose the extent of Brown's authority to make loans in advance of approval by the directors. Whether before the directors insisted upon the removal of the Valdez loans from the bank in 1917, Brown could have been found guilty of dishonesty, a violation of the laws of the state, in making them is

by no means clear; while it can be found that in 1917 the directors of the bank did not so view his conduct.

The specification, that the directors permitted Brown to act unlawfully in the management of the bank, is that they allowed him to break the law of the state requiring him to keep a book showing all the loans of the bank and their approval by the investment committee. The evidence is that Brown kept the book; the failure of the investment committee to enter their approval or disapproval was not a breach of law by Brown. This proposition is merely another method of alleging plaintiffs' failure to exercise due and customary supervision.

Likewise the contention that the plaintiff failed to notify the defendants of Brown's dishonest transactions is merely a restatement of the claim of condonation. ·

The defendants not responding upon notice of the loss, two of the directors, Mr. Vaillancourt and Mr. Goss went to Baltimore, the home office of the defendants, and had an interview with Mr. Lang, the vice-president, at which no objection was made as to the delay in notice, but Mr. Lang said he would have to take the matter up with reinsuring companies which had been German, but because of the war, business with them was interrupted and some Norwegian companies had been taken on. To the argument of counsel in reference to the failure of Lang at this interview to object to the delay in giving notice and the statement as to the confusion as to German reinsuring companies caused by the war, the defendants excepted. The witness, Vaillancourt, testified fully as to the matter; so did the witness, Goss, except that, when his testimony was given, the reference to reinsuring companies was excluded upon objection.· Whether any or what inferences could be drawn from the failure of the defendants' vice-president to make any objection to the claim of liability and his insistence upon a further statement of the details of the claim is a question of law. Counsel did not violate the rules of advocacy in drawing inferences therefrom which he asked the jury to accept. The facts were all in evidence. The only point where counsel overstepped was in the assertion that the witness Goss testified to Lang's statement about foreign reinsurers, but Vaillancourt had without objection testified thereto, and there was no controversy about the fact. As the defendants did not controvert the fact properly in proof it is impossible to hold they were prejudiced by the additional weight given to an undisputed fact by the assertion that two witnesses testified thereto instead of one. The defendants' remedy if

they thought counsel sought to draw inferences that could not be legally drawn was to ask for proper instructions from the court. They followed this course. Requests 15 and 16 in substance were that there was no evidence from which it could be inferred that the defendants admitted any liability or waived any defences. The issue of waiver was not submitted to the jury and no instructions were given the jury on the subject. The jury were told that the plaintiffs could not recover unless the notice of October 22 was under the circumstances immediate notice as required by the bond. This in substance though not in terms satisfies the request and the defendants have not objected here because the terms of the request were not given.

There was evidence, however, considered by some authorities sufficient to authorize a finding of waiver of insufficiency of notice. Richards Insurance, s. 147; *Planters' Mut. Insurance Co.* v. *Loyd,* 67 Ark. 584; s. c. 77 Am. St. Rep. 136; *Citizens Trust & Guaranty Co.* v. *Insurance Co.,* 229 Fed. Rep. 326; s. c. Ann. Cas. 1917, C. 416. After the notice of October 22, the defendants sent their special agent to Berlin who made an examination of the affairs of the bank and reported to them. In the absence of evidence to the contrary the jury could have inferred that everything disclosed by the books of the bank was discovered by this agent and by him reported to and known by the vice-president at the interview in Baltimore when he talked about reinsurance as a reason for delay and asked for further information. Instead of objecting to delay in notice the defendants insisted on additional information. At that time, November 25, Goss and Vaillancourt gave the defendants a written statement of the claim of the plaintiffs and later upon the demand of the defendants for further information they were furnished with a complete abstract of all the transactions of Brown with the bank. Then for the first time the defendants made the claim that notice required by the bond had not been given. It would not be a violent presumption to conclude that vice-president Lang being fully advised as to all the transactions between Brown and the plaintiffs purposely refrained from objecting to the insufficiency of notice until he had secured the plaintiffs' complete statement as to these transactions. In any event a jury could so find and so finding could on the authorities above referred to properly conclude that the objection to the sufficiency of notice was waived. But as this question has not been argued, no opinion thereon is expressed.

The bank commissioners required the directors to take up the

Valdez Creek notes to the amount of $43,000 and they did so to enable the bank to go on. This was in no sense a payment of the notes or a discharge either of the signers or the defendants. Taking up the notes for the protection of the bank the directors would necessarily be entitled to the benefit of any security held by the bank including the bonds in suit. If the proceeds of the judgment in this case are more than sufficient to discharge the loss of the plaintiffs on the other notes, they will hold the excess as trustees for those who took up the Valdez Creek notes.

The plaintiffs were chartered in 1913 as the Guaranty Trust Company. Laws 1913, c. 381. Although they were authorized by law to conduct a savings department there was no division of the corporation into separate entities. *Bank Comm'rs* v. *Company*, 75 N. H. 107, 110. A loss in either department was the loss of the stockholders. The treasurer authorized by the charter was the treasurer of the corporation not of the different departments. *Ib.*, s. 5. As between the plaintiffs and the defendants the words, "Trust Department" and "Savings Department" in the bonds were mere surplusage. They described no personality in existence. The obligee whom the defendants guaranteed against loss was the Guaranty Trust Co., the officer whose honesty they guaranteed was the treasurer of that company. Whether the language might have the effect of giving depositors of the savings department priority over general creditors in case of insolvency of the company is not in issue. Such may have been the object of the language but there is now no occasion to speculate upon its purpose. It could not have been intended to enable the defendants to escape the obligations of their contract accordingly as funds stolen at the time of the theft happened to be entered in the books of one department or the other. In fact when the commissioners took possession the trust department owed the savings department nearly $30,000, and if the institution had been then closed the savings department would have suffered from the loss. There was no error in the instructions on this point.

Although the court refused to exclude the Valdez Creek notes from the consideration of the jury the substance of the other requests as to the determination of the amount of loss which included the correct application of the proceeds of Brown's property realized by the bank appear to have been given.

The verdict does not disclose upon what notes it is founded. Hence the judgment will not be *res judicata* establishing defendants' liability for loss on the Brown & Gerry note. The evidence to which

attention has been called of approval of Brown & Gerry notes relates to earlier notes and not to the note of January, 1918, upon which loss was claimed.

The result is

*Exceptions overruled: judgment for the plaintiffs.*

WALKER, J., was absent: the others concurred.