Hobkblower, C. J.
It appears by the Sheriff’s return to this writ, that he has defendant in his custody, by virtue of an execution issued against the goods and body of the defendant, at the suit of Richard L. Hedenberg, by Stephen R. Haines, a justice of the peace of the county of Essex; a copy of which execution is annexed to the return.
The counsel for the prisoner produced, and laid before the court, certified copies of the affidavits, on which the justice had declared himself satisfied, that the defendant had money in the hands of Charles Ailing, which he unlawfully and unjustly refused to apply and on which he had thereupon issued the execution. Those affidavits are as follows : first, Jesse C. Hedenberg made oath, that John Clark, the defendant, “ had money in the hands of Charles Ailing to his use, to the amount of seventy-five dollars, or over ” — secondly, Moses B. Martin, the constable testified, that, on the 14th day of July instant, he presented an execution in favor of the said Richard L. Hedenberg against John Clark, and demanded of him an application, in payment thereof, of money in the hands or possession of Charles Ailing, to the use of the said John Clark; but that the said John Clark, unlawfully and unjustly, refused to apply the said money to the payment of the said judgment and execution. On these affidavits the justice issued another execution in the same case, which is the execution in question.
The counsel for the prisoner insisted very strongly, that the new constitution has entirely abrogated the act of 1842; and that now, a man can only be imprisoned for a debt, which has been fraudulently contracted; and that in such case, the fraud must be judicially established by the judgment of a competent court, in due course of law, before the defendant can be imprisoned. Such, however, I am persuaded, was not the intention of the framers of the constitution; nor does the language of that instrument allow of, or give countenance to, such a construction. Its negative language, “ no person shall be imprisoned for debt,” coupled with the exception, “ except in cases of fraud,” is equiv *650 alent to saying affirmatively, that a person may be imprisoned for debt, in cases of fraud ; and whether the fraud has relation to the time and manner of creating the debt, or to subsequent attempts to defeat the creditor’s recovery of it by the ordinary process of the law, can make no difference. It is left however to the legislature to say, what shall be deemed such fraud, as shall make a man liable to imprisonment; and how it shall be proved, in order to justify the arrest of the debtor. We cannot do such injustice to the framers of the constitution, as to suppose they meant to say, you may imprison your debtor for the debt he owes you, provided that by indictment, or in some other mode yet to be devised, you will first convict him of fraud in the creation of the debt, or in avoiding the payment of it. The more I have reflected upon this clause in the constitution, the more I am convinced, it was most happily constructed to protect the honest, but unfortunate debtor from imprisonment; while it leaves the legislature at liberty, from time to time, as public policy and experience may dictate, to reach the fraudulent and dishonest shifts and devices of the debtor; and subject him to imprisonment, for the debt he is seeking to avoid the payment of.
In the next place it was insisted by the prisoner’s counsel, that so much of the act of 1842, as exposes a man to imprisonment for refusing to apply money or choses in aetion, in his own possession, or in the hands of other persons for his use, to the payment of his debt, is incompatible with this clause in the constitution, and therefore abrogated.
The argument upon this point went upon the ground, that there was nothing fraudulent, in a man’s having money or property in his own possession, or in the possession of another for his use and subject to his control, and yet refusing to appropriate it to the payment of his honest debt. I am not prepared however to concede, what is assumed in this argument. I think it one of the most dishonest things a man can be guilty of, to refuse to pay his honest debts, when he has the means to do so. Whatever is dishonest is fraudulent in foro eonseientice and is so treated in a court of equity. Fraud and dishonesty are synonymous terms. The true spirit of the constitution is this, — and it speaks the enlightened and benevolent language of the age in *651 which we live, — the honest debtor, who is poor and has nothing to pay with, shall not be imprisoned at the mercy of his creditor. But if the debtor, instead of putting himself upon his honest poverty, seek to elude the jurisdiction and process of the courts ; if he conceal, or assign or remove his property, to keep it out of the reach of his creditors ; or if he have the means in his pocket or under his control, of paying his debt, and refuse to do so, he is a dishonest and fraudulent man. He is the very man that the constitution says may be, and that common sense and common honesty says, ought to be imprisoned, until he disgorge his money and deliver up his property, to his confiding creditor.
It is not, however, the naked refusal of the debtor to apply money or property in his possession, or in the possession of another for his use, that subjects him to arrest and imprisonment under the act of 1842. If that were the language of tne act, I should have some doubts, whether, from the generality of its terms, it did not come in conflict, not only with the constitution, but with good sense. But the statute requires proof, not only that the debtor has money or goods, but also, that he “ unjustly and unlawfully ” refuses, &c, How as I have said before, if he acts unjustly and unlawfully, he acts fraudulently; an unjust man is a fraudulent one. Surely the framers of the constitution did not mean, that if a man comes to you and says, here is the gold watch I bought with the money I borrowed of you, or, taking out his purse, says here is the money you lent me, but you shall not have the one, nor will I pay you with the other, that such a man does not act fraudulently. The true and only question then is, whether the defendant in this case, has “ unlawfully and unjustly ” refused to apply money, &c. And this renders it necessary to examine the evidence, which was laid before the justice, and upon which he had adjudged himself satisfied, that the defendant had “ unlawfully and unjustly ” refused.
How I may have a large sum of money, in my pocket, or in the bank • or dioses in action, or other property, in my possession or in the hands of my friend or trustee, and I may refuse to appropriate them to the payment of an honest debt; and yet, I may not do so, unlawfully or unjustly. I may be under higher conscientious obligations. I may desire and design a general *652 and pro rata distribution, among all my creditors: or I may feel myself under a moral and conscientious obligation, by promise or otherwise, to apply those funds towards the satisfaction of a particular debt. It is not therefore every refusal to apply, that is unlaioful and unjust. What then was the evidence before the justice in this case? Let us see.
Jesse Hedenberg swears, that “ John Clark had money in the hands of Charles Ailing to his use to the amount of seventy-five dollars or more.” But when, how long before that time, or how the witness came to the knowledge of that fact does not appear.
But pass this by. Admitting there was evidence legally sufficient, to satisfy the justice of that fact; how does it appear, that Clark “unlawfully and unjustly” refused to apply it? Let it be remembered, that it is not sufficient to prove simply that Clark refused, but'that he refused in a manner, and under circumstances, that rendered his refusal “unlawful and unjust.” It was as necessary to do this, as to prove that he had funds in the hands of Charles Ailing. Now that the defendant, “ unlawfully and unjustly, refused,” is a legal proposition ; and not a ■mere matter of fact, to be sworn to by a witness. And yet, Martin, the witness in this case, testifies that Clark “ unlawfully and unjustly refused.” And if we strike this out of his affidavit, then his testimony is simply, that Clark refused to apply the money; and the question is, whether that was such evidence, as would legally authorize the justice to adjudge, that it was an “ unlawful and unjust refusal ” and therefore a fraudulent one. I think it was not. The affidavit ought to have stated, what passed between the deponent and Clark, if any thing; what he said; the reasons he assigned; his conduct and all the circumstances attending the interview, so that the justice could determine, whether he acted “unlawfully and unjustly” or not.
It is a great mistake, for witnesses to swear to conclusions of law; as that a defendant is about to remove his goods “ to defraud his creditors ; ” or that he “ unlawfully and unjustly refused to apply, &c.,” instead of swearing to facts. It is true, it will not vitiate the proceeding, if the witness swears to such legal conclusions, provided he swears to facts enough to justify such *653 conclusions; but in this case, I think, there was no evidence at all of an illegal and unjust refusal, and therefore the defendant must be discharged.
The defendant discharged.
Cited in Perry v. Orr, 6 Vr. 299.