UNITED STATES FIDELITY & GUARANTY CO. v. EGG SHIPPERS'
STRAWBOARD & FILLER CO.

(Circuit Court of Appeals, Eighth Circuit.    October 6, 1906.)

No. 2,318.

**1. INSURANCE—ACTION ON FIDELITY BOND—EVIDENCE.**

In an action on a fidelity bond insuring a corporation against loss through the fraud or dishonesty of an officer to recover a loss resulting from his acts, the testimony characterizing such acts necessarily takes a wide range, and evidence of his general course of conduct in plaintiff's affairs, though not directly relating to the transactions in issue, is properly admissible to show the spirit and intent which moved him.

**2. SAME—FIDELITY BONDS—CONSTRUCTION.**

Liability on a fidelity bond insuring an employer against loss through the "fraud or dishonesty" of an employé is not limited to such losses as result from his criminal acts, such as embezzlement or larceny, but such words have a broader meaning, and include any acts which show a want of integrity or a breach of trust.

**3. SAME—ACTION ON BOND—PLEADING.**

The petition in an action on a fidelity bond insuring a corporation against loss through the fraud or dishonesty of its treasurer states a cause of action where it alleges that such treasurer falsely credited himself on the company's books with a disbursement which he did not make, making him short in his accounts, and that, having authority to execute notes and accept drafts for the company representing its valid indebtedness and not otherwise, he accepted drafts for large amounts which it did not owe, and used its funds in paying the same, resulting in loss to it through the insolvency of the drawer, all of which acts he concealed from its directors.

**4. SAME—APPLICATION AS EVIDENCE—IOWA STATUTE.**

A writing executed by a corporation for the purpose of procuring a fidelity bond insuring it against loss through the fraud or dishonesty of an officer, which contains questions and answers and representations which are made warranties, and a breach of which by the terms of the bond thereafter issued will render the same void, is an application for insurance within the meaning of Iowa Code 1897, § 1741, which requires insurance companies to attach a copy of the application to each policy of insurance, and provides that the omission to do so shall preclude the company from pleading or proving any part of such application or the falsity of any representations made therein in an action on the policy.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 216.]

**5. SAME—SCOPE OF STATUTE.**

Iowa Code 1897, § 1741, requiring insurance companies to attach a copy of the application to each policy of insurance issued by them, applies to all forms of insurance, including fidelity bonds.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 216.]

In Error to the Circuit Court of the United States for the Southern District of Iowa.

J. O. P. Wheelwright (Albert C. Cobb and J. L. Stevens, on the brief), for plaintiff in error.

William C. Howell (Walter H. McElroy and H. Scott Howell, on the brief), for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

148 F.—23

HOOK, Circuit Judge. This was an action by the Egg Shippers' Company upon a bond of the Guaranty Company insuring the former against loss through the fraud or dishonesty of one Boardman, its treasurer. The plaintiff was an Iowa corporation organized by dealers in poultry and eggs, and its business was the purchase and sale of fillers for egg cases used in transportation. Though of small capital, it was thriving and prosperous from its organization down to the time of the conduct of its treasurer, which furnished the cause of this litigation. The fillers it dealt in were purchased from the manufacturer, the Tama Paper Mills & Filler Company, under a contract providing that the plaintiff should accept and honor the drafts of the Tama Company, due in 15 days, for all manufactured fillers which it ordered shipped, and drafts payable in 30 days for the remainder of the contract quantity that was manufactured, but not desired for immediate delivery. The contract specified that bills of lading should be attached to the first class of drafts, showing the fillers had been shipped, and warehouse receipts to the other class of drafts, showing that the fillers covered by them had been manufactured and were actually in the warehouse subject to the plaintiff's order. Boardman was the treasurer of the plaintiff, with authority to execute notes and accept drafts representing its bona fide indebtedness. He was a salaried officer, and the financial management of the plaintiff's affairs was largely in his charge between directors' meetings, which were held semiannually. At one meeting his official report showed that he had allowed the Tama Company to overdraw its account about $2,600. He was at once instructed by the directors that he must not continue such course; that they were not satisfied of the integrity of the manager of the Tama Company; that he must secure fillers balancing the overdraft; and that in the future nothing should be paid and no drafts should be accepted unless the goods already manufactured had either been shipped or were held in the warehouse subject to plaintiff's order, and unless those conditions were shown by bills of lading or warehouse receipts.

There was substantial evidence tending to show the following facts, and on appeal we must assume them to be true. Boardman violated his official duty, ignored his instructions, concealed his conduct, and falsified his reports. When the crash came, there was outstanding about $70,000 of negotiable paper of the Tama Company upon which Boardman had obligated the plaintiff by way of accommodation, and in addition to this he had advanced to the Tama Company about $10,000 for which he had no bills of lading or warehouse receipts. These sums amounted to more than seven times the plaintiff's capital, and the Tama Company soon failed for a large sum. The plaintiff was made bankrupt. Boardman was found to have been using plaintiff's money in his own affairs. He left the state soon afterwards, taking with him the check stubs, canceled checks, drafts, and vouchers pertaining to plaintiff's business, having previously refused to allow his successor in office to examine them, for the reason, as he alleged, that they also concerned his personal business. The items which entered into plaintiff's verdict for $8,700 were $3,000 of a credit which Boardman took in his accounts as having paid an obligation of the plaintiff, when, in fact, he had

not paid it, $590.24 which the plaintiff paid upon one of the accommodation acceptances that was held by an innocent purchaser and was therefore an obligation which plaintiff could not escape, and $5,130 which Boardman paid to the Tama Company without bills of lading or warehouse receipts. These items amount to a little more than the recovery, but it is probable that the jury omitted the odd dollars and cents to make a round sum. Each of them represented an actual loss to the plaintiff. It is true that all that Boardman did of a fraudulent and dishonest character was not directly connected with these items, but it is also true that all of the loss included in the recovery resulted from a willful and inexcusable betrayal of his trust, and the evidence of his general course of conduct in the plaintiff's affairs was properly admitted to show the spirit and intent that moved him. In such cases the scope of inquiry necessarily takes a wide range, and we are of the opinion that the latitude allowed by the trial court did not go beyond the legal limits. The defendant claims that there was no showing of a breach of the fidelity bond which was conditioned to "make good and reimburse to the employer [the plaintiff] all and any pecuniary loss sustained by the employer, of money, securities or other personal property in the possession of the employé [Boardman], or for the possession of which he is responsible, by any act of fraud or dishonesty on the part of said employé, in the discharge of the duties of his office or position." Another clause of the bond provided that its true intent and meaning was that the defendant should be responsible only "for moneys, securities, or property diverted from the employer through fraud or dishonesty on the part of the employé." In other words, defendant contends that no fraud or dishonesty of Boardman was shown. We are at a loss how to characterize his conduct if it was not both fraudulent and dishonest. The test is not whether he intended to personally profit by his course, though that he did is perhaps a permissible inference from the facts shown. He occupied a position of trust and confidence which he secretly betrayed. He received compensation for guarding the interests of his employer and he was willfully, intentionally, and grossly faithless. This is not a case of mere indiscretion or error of judgment. There was a breach of trust, a want of financial integrity, coupled with deceit and concealment, and resulting in financial loss to the employer. This was both fraud and dishonesty within the meaning of the bond. Cases involving fidelity bonds insuring against "embezzlement and larceny" or "fraud and dishonesty amounting to embezzlement or larceny" are obviously not in point. Guarantee Co. v. Trust Co., 40 C. C. A. 552, 100 Fed. 559; Monongahela Coal Co. v. Fidelity & Deposit Co., 94 Fed. 732, 36 C. C. A. 141; Reed v. Fidelity & Casualty Co., 189 Pa. 596, 42 Atl. 294; Milwaukee Theater Co. v. Fidelity & Casualty Co. (Wis.) 66 N. W. 360. In the bond before us the terms "fraud" and "dishonesty," while relating to pecuniary matters, are employed in a broader and more comprehensive sense. They are not restricted to such conduct as imports a criminal offense. An act entailing a financial loss to another may be both fraudulent and dishonest, and yet not fall within the definitions of embezzlement and larceny.

The defendant objected to the introduction of evidence, and also moved for a directed verdict upon the ground that the petition did not state facts sufficient to constitute a cause of action. No motion to make the petition more definite and certain was interposed. In addition to full descriptive averments of the terms of the bond and a compliance therewith, a copy of the bond being also attached as an exhibit, the petition discloses that Boardman was plaintiff's treasurer, with authority to execute notes and accept drafts representing its valid and bona fide indebtedness and no other; that between January 1 and November 18, 1902, he fraudulently and dishonestly and without plaintiff's knowledge accepted drafts drawn on him by the Tama Company which he knew represented no valid indebtedness of his company; that he did so to enable the drawer to dispose of them to innocent purchasers, and they were so disposed of; that, without authority, he fraudulently and dishonestly and without plaintiff's knowledge paid $22,000 of such drafts from plaintiff's funds in his hands; that the Tama Company was insolvent, and that Boardman charged it upon his books with the amount so paid out, leaving it finally indebted to his company in the sum of $12,000; that it was Boardman's duty to receive and disburse plaintiff's funds and keep true books of account and he had no right to credit himself with the payments made on the fraudulent drafts; that he also entered a credit of $3,000 to himself as having paid a note of that amount, but the entry was falsely, fraudulently, and dishonestly made, because he had not paid the note, and as a result Boardman was short in his accounts. There was a further averment of a partial payment by plaintiff upon one of the fraudulent drafts that had passed into the hands of an innocent purchaser. We are of opinion that a cause of action was stated in the petition and that the trial court was right in overruling the general objection made to it. The mere charge that Boardman falsely, fraudulently, and dishonestly took credit upon his books for a disbursement he never made, resulting in a shortage in his accounts as treasurer which he failed and refused to pay, is in itself sufficient to sustain the petition against the attack made upon it. The charge is in substance one of pecuniary loss caused by the dishonesty of Boardman.

Complaint is also made that the trial court excluded the written statement made by the plaintiff to secure the bond sued on. It was offered in evidence by defendant to show certain warranties and representations, the breach and falsity of which were relied on to defeat recovery. The evidence was not admitted because the defendant had failed to comply with an Iowa statute (section 1741, Code of 1897) which provides that all insurance companies or associations shall attach to or indorse upon every policy "a true copy of any application or representation of the assured which, by the terms of such policy, are made a part thereof, or of the contract of insurance, or referred to therein, or which may in any manner affect the validity of said policy," and that the omission to do so shall preclude the company issuing a policy from pleading or proving any such application or representations or the falsity of any part thereof in an action upon the policy. It is conceded by defendant that the bond in suit is an insurance contract,

but it is contended (1) that the instrument offered is not an application, and (2) that the Iowa statute was not intended to apply to fidelity bonds.

Although differing slightly from the usual form of application for insurance, in that it recites than an application for the bond had already been made, nevertheless the writing is to all substantial intents and purposes a part of that preliminary step on the part of the applicant that is usually designated by that term. It contains various questions concerning the risk propounded by the defendant, the plaintiff's answers, and a recital that it shall be the basis of the bond if issued. The bond contains a reference to it as part thereof, a warranty by plaintiff of the truth of its statements, and a provision that untruth in any respect shall make the bond void. It is altogether clear that the written statement which the defendant failed to attach to or indorse on the bond is an application or representation within the meaning of the Iowa statute.

The statute was originally enacted in 1880, and it is contended that at that time the business of insuring the fidelity of employés was unknown in Iowa, and that therefore it cannot be said to have been within the intent of the Legislature in the passage of the law. Assuming the premise to be true, there is nothing in the statute indicating a purpose to confine its operation to those subjects of insurance that were then known. On the contrary, it was framed in general and comprehensive terms that cover insurance of every kind and character. The virtue and the vitality of laws so framed are such that they extend to and embrace the new growth and development of the subjects to which they relate. With reason equal to that of the contention now made, it could be said that the commerce clause of the Constitution did not apply to our railroad systems of to-day because they were unknown at the time of its adoption. The unvarying construction of the statute by repeated decisions of the Supreme Court of Iowa is that it includes every insurance company, association, and individual doing an insurance business of any kind, and that its purpose is to require the insurer to attach to, or indorse upon, the policy a copy of every instrument that may affect its validity. Moreover, in 1897 a new Code for Iowa was adopted as the existing law, the provisions of the statute in question were incorporated in it, and all prior laws were repealed. In this Code there is explicit recognition of the business of insuring the fidelity of persons holding places of private or public trust, and that such business was then quite generally engaged in throughout the United States is a matter of common knowledge.

There is nothing in the assignments of error upon the refusal to give instructions requested by the defendant that requires mention further than to say that such as should have been given were fairly embodied in the charge of the court.

The judgment is affirmed.