Hillsborough, }
Nov. 4, 1914. }

### ARTHUR G. TOMUSCHAT & a. v. NORTH BRITISH AND MERCANTILE INSURANCE CO.

### SAME v. AACHEN AND MUNICH FIRE INSURANCE CO.

Where the owner of a burned building delivers to the insurers thereof within the time limited a notice which is plainly intended as a fulfilment of the requirements as to proof of loss, the question whether they ought reasonably to have notified him of its insufficiency and their insistence upon a strict compliance with the statutory provisions is one of fact for the jury; and evidence that they so conducted themselves as to lead the insured to believe that the question of damages was the only matter in issue warrants a finding that they are estopped to set up his omission in defence to a suit upon the policy.

The word "buildings," as used in section 5, chapter 170, Public Statutes, includes both finished and unfinished structures.

ASSUMPSIT, on fire insurance policies. Trial by jury and verdicts for the plaintiffs. Transferred from the January term, 1914, of the superior court by *Chamberlin,* J., on the defendants' exceptions to the denial of a motion for nonsuit and to a ruling that the policies in suit were valued policies.

September 26, 1911, the defendants issued policies insuring the plaintiffs' buildings and personal property against loss by fire. The buildings were then in process of construction, and the plaintiffs

were given thirty days in which to finish them. Very little work was done after the buildings were insured, and on October 26 and November 26 the defendants extended the time for completion for additional periods of thirty days each. December 7, the buildings were totally destroyed by fire.

Within thirty days after the fire, the plaintiffs sent to the agents of the defendants a copy of a writing signed by them, which conveyed the information that the insured property was burned on December 7, 1911. The defendants did not agree to accept the writing as proof of loss, but their agents met the plaintiffs at least once after its receipt, and at that meeting, which was within thirty days of the fire, the plaintiffs offered to deduct $500 from the total insurance, in consideration of immediate payment. In answer to this proposition, the defendants said, in effect, that the plaintiffs would have to deduct a much larger sum before a settlement could be reached. The plaintiffs replied that, rather than make a larger deduction, they would leave the matter to a jury, and the discussion was closed.

*Jones, Warren, Wilson & Manning* and *Patrick H. Sullivan* (*Mr. Manning* orally), for the plaintiffs.

*Ernest L. Guptill* and *Albert R. Hatch*, for the defendants.

YOUNG, J. The defendants rest their contention that the court erred in denying their motion for a nonsuit on the proposition that the notice the plaintiffs gave them was insufficient under the provisions of section 6, chapter 170, Public Statutes. It does not necessarily follow from the fact that the notice was insufficient that the court erred in denying their motion. It can be found that the defendants received the notice either at or before the time they last met with the plaintiffs, and that this was within thirty days after the fire; also that the defendants knew the notice was intended as a compliance with the provisions of section 6. Under these circumstances it can be found that it was the defendants' duty to call the plaintiffs' attention to the fact that they had not complied with the statute, if they intended to insist on a compliance with its provisions; for it is the duty of insurers, as of every one else, to do whatever is reasonable under the circumstances. *Welsh* v. *Assurance Corp.*, 151 Pa. St. 607. It can be found that the defendants not only did not tell the plaintiffs that the notice was insufficient, but that they

conducted themselves in such a way as to lead the insured to think that the question of damages was the only matter in issue. The question whether the defendants should have told the plaintiffs the notice was insufficient was for the jury (*Robinson* v. *Insurance Co.*, 90 Me. 385), and the test to decide it was to inquire whether, considering the facts of this case, the ordinary man would have told them; in other words, whether under the circumstances of this case telling the plaintiffs they would not accept the notice was the reasonable thing for the defendants to do. In a word, it can be found that the defendants are estopped to set up as a defence to this action the plaintiffs' failure to comply with the provisions in the policies in respect to furnishing a proof of loss. *Perry* v. *Insurance Co.*, 67 N. H. 291, 296.

It is rather difficult to understand the defendants' contention in respect to the ruling excepted to; but as their brief is understood, they say the court erred in holding that the policies in suit were valued policies, (1) because structures not fully completed are not "buildings" within the meaning of section 5, chapter 170, Public Statutes, and (2) because the parties understood the policies were to be considered as "builders' risks" until after the buildings were completed.

It is the general rule that the words of a statute are to be given their ordinary meaning. It is clear that the structures covered by the policies were "buildings" within the meaning of this rule, for the partitions were set, the floors laid, the roofs completed, and the outside of the walls practically finished when the policies were issued; and any structure with walls and a roof is a "building" within the ordinary meaning of that word. *Nowell* v. *Academy*, 130 Mass. 209; 1 Cent. Dict. 712. The only other evidence relevant to the issue of what is intended by "buildings," as used in section 5, chapter 170, Public Statutes, is the context and the purpose which led the legislature to enact that section. The section was originally enacted as section 2, chapter 93, Laws of 1885, and the purpose of that act was to do away with some of the evils peculiar to the insurance business. The special office of this section in the legislative scheme was to discourage over-insurance on the part of insurers. The means the legislature devised to effect its purpose was to take from insurers their common-law right to defend on the issue of damages when property is totally destroyed. It is obvious that the evils incident to over-insurance are at least as great in the case of buildings in process of construction as in the case of completed

structures. Consequently it must be held that "buildings," as used in section 5, includes both finished and unfinished structures.

There is no evidence to sustain the defendants' contention that the parties understood that the policies in suit were to be "builders' risks" until after the buildings were completed. All the evidence relevant to that issue tends rather to the conclusion that the defendants offered to insure the structures as buildings in order to induce the plaintiffs to give them the business; and having so insured them, they cannot now be heard to question the extent of their liability.

*Exceptions overruled.*

All concurred.