EXETER BANKING COMPANY *v.* FRANK W. TAYLOR & a.

SAME *v.* WILBUR H. YOUNG & a.

*George R. Scammon* and *Hughes & Burns* (*Mr. Hughes* orally), for the plaintiff.

*William H. Sleeper*, for the defendant Taylor.

*Robert W. Upton* (by brief and orally), for the Fidelity & Deposit Company of Maryland.

MARBLE, J. The plaintiff was incorporated in 1893 to do a general banking business. Laws 1893, *c.* 195. In 1924 it acquired the assets of the Union Five Cent Savings Bank (P. L., *c.* 263), and thereafter maintained both a mercantile and a savings department. The defendant Taylor entered the plaintiff's employ in 1904. In 1910 he became treasurer of the Union Five Cent Savings Bank and occupied that position until 1921, when he resigned to become the plaintiff's assistant treasurer. The first bond under consideration was issued at that time.

After the consolidation of the two banks he was elected vice-president and treasurer. On April 12, 1924, the defendants executed the second bond, by the terms of which the Fidelity & Deposit Company agreed to pay the plaintiff such loss, not exceeding $50,000, as the plaintiff might sustain by reason of Taylor's failure to faithfully perform the duties of his office as treasurer of the savings department

(P. L., c. 264, s. 9), and in the course of his employment in any other position in the bank to which he might be assigned.

The alleged losses occurred in the mercantile department. A summary of each day's transactions in this department was entered on a settlement sheet, and the item entitled "To-day's Cash" included currency, gold, silver, and cash items. Shortages were nowhere specifically designated as such but were entered under the printed headings "Memo" and "Cash items."

During the first six months of 1924 shortages amounting to over $3,000 were so entered. Although Taylor was the officer in charge of the general business of the bank, he did not report these shortages to the directors, but on June 30, the day of their semi-annual audit, transferred $3,000 of this item to inactive accounts. By so doing he prevented the examiners from discovering the discrepancy.

After the examination he continued to enter the daily shortages under "Memo" and "Cash items" until November 5, when the state bank examiners appeared to make their official audit. He then revealed the true situation to them and to the president of the bank. The president did not notify the directors of the condition thus disclosed, but employed a firm of accountants to investigate the affairs of the bank. The accountants reported to the directors on December 29. On December 31 there was a further shortage of over $1,000, making a total deficit of $10,694.81.

It could be found that if the directors had been seasonably notified of the shortages they would have taken effective means to prevent loss. A wrongful intent on Taylor's part could be inferred from the circumstances; consequently his motion for a directed verdict was properly denied. *State* v. *Hale, ante,* 403.

On the other hand, if Taylor's testimony is entitled to credence, his motive in concealing the defalcations was an honest one. He hoped by avoiding publicity to catch the thief. And while there is much justification for the trial court's conclusion that no reasonable man could have accepted this explanation as true, it is to be borne in mind that the plaintiff is here seeking reimbursement for the shortages and that it does not conclusively appear that Taylor was a party to the theft or that prompt notice to the directors would have averted the loss.

Since a verdict may be ordered for a plaintiff only when the sole inference that can reasonably be drawn from the undisputed facts conclusively establishes the plaintiff's case (*Williams* v. *Duston,* 79 N. H. 490, 491, and cases cited), it is unnecessary to decide whether the present plaintiff by failing to move for a directed verdict at the close of the

evidence waived its right to later move for judgment notwithstanding the verdict. The defendants' exception to the final order of the trial court entering a verdict for the plaintiff is therefore sustained.

The original bond insured the bank against any loss not exceeding $10,000, which it might sustain through any act of fraud, dishonesty, larceny, embezzlement, forgery, misappropriation, wrongful abstraction or wilful misapplication, committed by Taylor, acting alone or in collusion with others while in the plaintiff's employ. The words fraud and dishonesty as used in contracts of this nature are broadly interpreted to include any acts which show a want of integrity or a breach of trust. *United States Fidelity &c. Co.* v. *Company*, 148 Fed. Rep. 353, 355; 25 C. J. 1094.

It was a condition of the bond that any suit to recover against the surety on account of a loss thereunder should be brought before the expiration of twelve months from the discovery of such loss. The loss in question was not discovered by the plaintiff until the report of the accountants to the board of directors on December 29, or at least it could be so found, and suit was brought within a year from that date. The contention that the knowledge of the plaintiff's president was the knowledge of the bank is untenable. *Hilliard* v. *Railroad*, 77 N. H. 129; *Poirier* v. *Company*, 84 N. H. 461, 463, and cases cited.

The bond contained a further provision that an itemized claim for loss, subscribed and sworn to by the plaintiff, be presented to the surety within three months after discovery of the loss. Written notice was in fact given the Fidelity & Deposit Company by plaintiff's attorney on May 19 and again on June 8. Conferences were also held with an official of the company. So far as appears, no objection was raised to the form or sufficiency of these notices, and the question of waiver was therefore for the jury. *Tomuschat* v. *Insurance Co.*, 77 N. H. 388.

This is equally true of similar provisions in the second bond. This bond insured the plaintiff against loss by reason of Taylor's failure to faithfully perform the duties of his office as treasurer of the savings department "and in the course of his employment in any other position in the bank" to which he might be "appointed, reappointed, elected, re-elected, or temporarily assigned." It is immaterial that the loss occurred in the mercantile department. Fairly interpreted, the bond was meant to cover Taylor's complete official activities, and there is evidence that it was the treasurer's duty to take full charge of the entire bank. The defendants are correct in their con-

tention that the bond did not insure the plaintiff against loss caused by Taylor's negligence. *Follett* v. *Insurance Co.*, 77 N. H. 457, 459, and cases cited.

It was a condition of the second bond that the plaintiff should "immediately" give the surety notice in writing of any default. "That what is immediate notice under the facts of a particular case is a question for the jury is here too well settled for discussion." *Guaranty Trust Co.* v. *Company*, 79 N. H. 480, 483. It follows that the Fidelity & Deposit Company was not entitled to a directed verdict.

In his argument to the jury Taylor's counsel stated at some length, subject to exception, that Taylor was carrying the financial burden of defending not only himself but the bonding company. If the bonds, which contain the customary indemnity provisions, may be said to constitute evidence of this alleged fact, the use made of this evidence was improper. The apparent purpose of the statement "was to enlist and arouse the sympathy of the jury, and influence them to return a verdict for the defendant without regard to the merits of the case." *Duplessis* v. *Guyon*, 80 N. H. 317, 318. There are other parts of the argument quite as objectionable.

The presiding justice has found that the jury were swayed by sympathy and prejudice and that the verdict is contrary to the weight of the evidence. It cannot be said as a matter of law that he erred in reaching this conclusion. *Bennett* v. *Larose*, 82 N. H. 443. The defendants' exception to the granting of the plaintiff's motion to set aside the verdict is accordingly overruled. This makes it unnecessary to consider the remaining exceptions.

*New trial.*

All concurred.