CLEM, Appellant, *v.* CLEM, Respondent.

(No. 7,270.)

(Submitted September 30, 1934. Decided October 17, 1934.)

[36 Pac. (2d) 1034.]

*Mr. G. G. Harris,* for Appellant, submitted a brief and argued the cause orally.

*Mr. E. J. Stromnes,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff brought this action to secure a divorce upon the ground of desertion. Defendant by her answer denied the allegations of the complaint as to desertion, and affirmatively, by way of cross-complaint, sought to secure a judgment for separate maintenance against plaintiff on the ground of desertion. Issue was joined on the affirmative allegations of the cross-complaint by reply.

A trial was had before the court without a jury. The court found that the parties were married; that the plaintiff had been a resident of the state of Montana for more than a year; that prior to 1924 the parties had maintained their marital residence in Great Falls; that in the summer months of that year defendant, pursuant to agreement between them, left Great Falls, established her residence in Seattle, Wash-

ington, and continued to reside there until the commencement of this action; that this separation was by mutual consent, and plaintiff has never since requested or sought a resumption of the marital relation with defendant; that the defendant did not desert the plaintiff; that defendant was willing and anxious at all times to return to plaintiff and to resume marital relations, but that plaintiff refused to resume cohabitation; that plaintiff was earning $178.67 per month; that defendant is not able to earn her own living and is in such a state of health that it is impossible for her to support herself from her own earnings, and has not sufficient property or income to support herself without the aid of plaintiff; and that the sum of $40 per month is a reasonable sum necessary for the support and maintenance of the defendant. Judgment was entered, in accordance with the findings, directing the payment of $40 per month by plaintiff to the defendant from the date of judgment until the further order of the court. The appeal is from the judgment.

The plaintiff demurred to the cross-complaint of the defendant, and objected to the reception of any evidence thereunder at the trial, upon the ground that the pleading did not state facts sufficient to constitute a cause of action. The demurrer was overruled as was also the objection. Plaintiff assigns error on these rulings.

Plaintiff argues that the cross-complaint does not sufficiently allege desertion on his part. It is there alleged that in the month of June, 1924, the defendant, at the request and with the consent of plaintiff, removed from Great Falls, where the parties had theretofore cohabited together, to Seattle, Washington; that since that time, at the request and with the consent and acquiescence of plaintiff, defendant has resided at Seattle; and that subsequent to the first of March, 1925, plaintiff by "devious methods and devices gave this cross-complainant to understand, and informed this cross-complainant that he did not want nor desire cross-complainant either to return to the city of Great Falls or to further cohabit with the said plaintiff."

It is further alleged in the cross-complaint, as follows: "Cross-complainant further alleges that the plaintiff for many years without cause or provocation has refused, and still now refuses, to live or cohabit with cross-complainant or allow her to return to his house or roof or to maintain any further marital relations whatsoever with the cross-complainant."

One of the grounds on which a decree for separate maintenance may be granted is wilful desertion. (Sec. 5736, Rev. Codes 1921; *Decker* v. *Decker*, 56 Mont. 338, 185 Pac. 168.) "Wilful desertion is the voluntary separation of one of the married parties from the other with intent to desert." (Sec. 5739, Id.)

Section 5741, Id., provides: "Separation by consent, with or without the understanding that one of the parties will apply for a divorce, is not desertion."

Section 5743, Id., reads as follows: "Consent to a desertion is a revocable act, and if one of the parties afterwards in good faith seeks a reconciliation and restoration, but the other refuses it, such refusal is desertion."

Plaintiff argues that the allegations of the cross-complaint do not contain any pleading of an attempted reconciliation between the parties at the instance of the defendant. The cross-complaint does not contain any express and direct averment to the effect that defendant ever sought a reconciliation with the plaintiff and a restoration of her former marital status. Whatever is necessarily implied in, or is reasonably to be inferred from, an allegation is to be taken as directly averred. (*Linney* v. *Chicago, M. & St. P. Ry. Co.*, 94 Mont. 229, 21 Pac. (2d) 1101; *Robinson* v. *F. W. Woolworth Co.*, 80 Mont. 431, 261 Pac. 253; *Marcellus* v. *Wright*, 51 Mont. 559, 154 Pac. 714; *Willoburn Ranch Co.* v. *Yegen*, 49 Mont. 101, 140 Pac. 231.)

It is definitely alleged in the cross-complaint that plaintiff has refused, and still and now refuses, to live or cohabit with the cross-complainant or to allow her to return to his house or roof, or to maintain any further marital relations. In order for there to be a refusal on the part of plaintiff,

it is necessarily implied and reasonably to be inferred that an offer to return had been made by the defendant; otherwise there could be no refusal. The cross-complaint is far from a model pleading, but in the light of the decisions cited, we think the cross-complaint is sufficient as against a general demurrer.

Plaintiff assigns error on the part of the trial court in ██ finding that he was not entitled to a divorce on the ground of desertion. In the early summer of 1924, plaintiff and defendant were residing together in Great Falls. Their oldest daughter was then seventeen years of age. She had graduated from high school the preceding year. Plaintiff and defendant had one other child, a son, approximately ten years of age. At that time defendant departed with both children for Seattle, where she established a residence with the children. The girl entered the University of Washington, which she attended for two years, and thereafter married. The boy entered the grade school and continued with his mother in Seattle until after his graduation from high school. A considerable portion of the family furniture was shipped by plaintiff to Seattle and used by the defendant to maintain a residence for herself and children there. Defendant testified that her going to Seattle to educate the children was with the consent of the plaintiff. The matter of entering the daughter in some university had been one of discussion in the family for some time preceding the removal of the defendant. She testified that one day early in June Mr. Clem came home to lunch and said, " 'How soon can you go to Seattle?' I looked at him in surprise; I said. 'Go to Seattle? Why?' He said, 'I thought you wanted to go when she went to school.' And we had discussed it, and she was young and quite easily led, and I wanted to protect her all I could and didn't like to send her to a large city alone, and we had talked that but nothing had been decided on. When he came home and asked that, I was greatly surprised; I didn't even know bulletins had been sent for or any arrangements made. I said, 'Why?' and he said, 'Don't you want to go? I thought you

wanted to go when she left.' I said we had discussed that but didn't think we had decided on anything. He said, 'You better go.' I said, 'Why go now? This is only June and school doesn't begin until October.' And then his excuse was that she was going with this certain young man, and we were very anxious for her education, and she was young and we would like to get her away from his influence, because he was out of school and older and ready to settle down; and he says, 'If she has to stay here all summer I will go crazy.' "

Plaintiff testified with reference to the matters under discussion in the quoted testimony of the defendant, as follows: "Q. And this removal of hers, together with the children, was entirely with your consent, was it not? A. Outwardly so. * * * Q. Now, I will ask you, Mr. Clem, if you did not come home one day, and at the time you came home you had a catalogue from the University of Washington, which you had obtained without taking it up with your wife, and told her to hurry up and get ready? A. Possibly, but I don't remember."

Additional evidence was offered by other witnesses on the question of removal by the defendant to Seattle in 1924. A careful consideration of the quoted testimony and other statements found in the record leads to the inevitable conclusion that defendant removed to Seattle with the consent of the plaintiff, and the separation resulting from her removal was with his consent.

This court in the case of *Bordeaux* v. *Bordeaux,* 43 Mont. 102, 115 Pac. 25, speaking with reference to separations by mutual consent, said: "Once the relation has been established by mutual agreement, express or implied, it will be presumed to continue until one or the other party revokes consent and in good faith seeks reconciliation and restoration. When this shall have been done by one party, and the other rejects the overtures thus made, the latter is guilty of desertion. (Rev. Codes, sec. 3650 [now sec. 5743]; *Howard* v. *Howard,* 134 Cal. 346, 66 Pac. 367.) The theory of the statute is that, where

both parties have consented, neither can allege that the act of the other is wrongful until consent has been revoked, though each may at the time of the separation have intended to abandon the other. (*Benkert* v. *Benkert*, 32 Cal. 467, 468; *Herold* v. *Herold*, 47 N. J. Eq. 210, 20 Atl. 375, 9 L. R. A. 696.)''

Plaintiff admitted on the witness-stand that he had never requested the defendant to return to him or offered to resume marital relations with defendant.

The separation between the parties having been in the first instance by mutual consent, that consent continued until revocation, which could only be effected by plaintiff seeking in good faith a reconciliation and restoration; and until such revocation of consent occurred, there was no desertion on the part of defendant. The evidence would support no other finding than that made by the court. It is not even conflicting on the question of desertion by defendant.

Plaintiff urges that the court erred in finding that defendant was willing and anxious to return and resume marital relations with him, and in finding that she was entitled to a decree for separate maintenance. In order for defendant to be entitled to separate maintenance under her pleadings, it was necessary for her to establish desertion on the part of plaintiff. The admitted separation was, as noted, by mutual consent. It was necessary for defendant, under section 5743, supra, to establish a revocation of her consent.

It appears from the evidence that, following her removal to Seattle until the spring of 1925, she and the plaintiff engaged in frequent and friendly correspondence. After that time until the commencement of this action plaintiff failed to correspond with defendant, with two exceptions, namely, at the time of the marriage of the daughter in 1926 a series of letters was exchanged; and about four years prior to the commencement of the action defendant underwent a serious surgical operation, at which time there was an exchange of another series of letters between the parties. During defendant's residence in Seattle, plaintiff contributed to the support of herself and the children various sums monthly, to and in-

cluding the month of October, 1932. During those years he contributed to the support of his wife the sum of $8,670, to the support of the son $2,527, and to that of the daughter $851. The contributions sent to the wife after the spring of 1925 were transmitted in letters to the children and by them delivered to the defendant.

Defendant testified that she wrote plaintiff a number of times, making inquiry as to why he had discontinued correspondence and what his grievance was, if any. On April 4, 1926, defendant wrote to plaintiff as follows: "Dear Noah. Here I am again. I tho't I would not bother you with a letter again, but feel it is necessary once more as I must have a definite understanding of things. Your letter to Gordon reve[a]led some things to me I had wondered about. I am being worn out with being in the dark as to your feelings & plans as regards me and the children. You have some very wrong ideas as to my motives and actions. I'm asking in all kindness for a frank statement from you as to your grievances so I can plan on what I am expected to do." To this inquiry she received no response.

In 1927 defendant through friends, who testified as witnesses in the case, conveyed to plaintiff her desire to return to the plaintiff. In response, the witness who communicated the request to plaintiff testified, "He indicated by his answer he didn't want her to come back." The fact of the making of the request and its refusal by plaintiff was not denied nor disputed by him. He admitted he failed to answer the letter written by the defendant.

Defendant testified that she was willing at any time to return to plaintiff upon the receipt of an invitation. He admitted that he never requested her to return. In this state of the record the trial court was justified in finding that defendant was willing and anxious to return to plaintiff and resume marital relations. In fact, the evidence in the record would not warrant any finding to the contrary.

The defendant has no separate property other than an equity

 in a house and lot in Seattle she purchased with funds provided by plaintiff. The rental from this property amounts to a little more than enough to take care of the future payments. Plaintiff for many years has been employed in a clerical position in the government service at Great Falls, Montana, and at the time of the trial was receiving $178.67 per month. Prior to the passage of certain Acts of Congress reducing salaries of government employees, his salary was $209 per month. Upon the termination of these reductions, his salary will be restored.

Defendant testified that she was physically unable to earn her living. During all the time plaintiff and defendant have been living separate and apart, with few exceptions, plaintiff has contributed a sum each month to the support of the defendant in excess of the allowance made by the court. The only evidence offered as to defendant's ability to earn a livelihood was to the effect that in the past she had, while residing in Seattle, a small class of music pupils from which she derived some little revenue; six was the maximum number of her pupils at any one time. Also, that she had at various times augmented the family purse by sewing. Her testimony as to her physical condition was not disputed.

Under the facts in this case, we think the court was not in error in allowing separate maintenance in the sum decreed.

Lastly it is urged that the court erred in admitting evidence as to communications between the parties subsequent to the commencement of this action. Conceding, but not deciding, that the evidence received was inadmissible, where a cause has been tried to the court without a jury, as was the present one, we will presume that any inadmissible testimony received in evidence was disregarded by the court in arriving at its conclusion. (*Murphy* v. *La Chapelle*, 95 Mont. 36, 24 Pac. (2d) 131; *State* v. *Driscoll*, 49 Mont. 558, 144 Pac. 153; *Buhler* v. *Loftus*, 53 Mont. 546, 165 Pac. 601; *Minnesota Loan & Trust Co.* v. *Busby*, 84 Mont. 373, 275 Pac. 761; *Williard* v. *Campbell*, 91 Mont. 493, 11 Pac. (2d) 782.)

We find no reversible error in the record. . The judgment is affirmed.

ASSOCIATE JUSTICES MATTHEWS and STEWART concur.

MR. CHIEF JUSTICE CALLAWAY and MR. JUSTICE ANGSTMAN not sitting.

Rehearing denied November 10, 1934.