Coös,
Dec. 4, 1934.

JOSEPH G. CANNING & a. v. THE CONTINENTAL INSURANCE COMPANY.

SAME v. PHOENIX ASSURANCE COMPANY.

SAME v. NIAGARA FIRE INSURANCE COMPANY.

SAME v. NORTH BRITISH & MERCANTILE INSURANCE COMPANY.

*Crawford D. Hening, Edgar M. Bowker* and *Bernard Jacobs (Mr. Hening* and *Mr. Jacobs* orally), for the plaintiffs.

*Thorp & Branch (Mr. Branch* orally), for the defendants.

MARBLE, J.   Although the terms of the lease are not in evidence the defendants apparently concede that the plaintiffs, at the time of the fire, had insurable interests in the demised premises (26 C. J. 33, 34) and that they are entitled in these actions to the amount found by the jury to constitute the damage to the betterments and improve-

ments unless it conclusively appears that the plaintiff Canning, contrary to the policy provisions, attempted to defraud the insurance companies after the loss.

Before the alterations in question were made, the rear portion of the first floor of the Pratt building was used as a garage while the front of the building was occupied by show rooms and a restaurant. A small moving-picture theatre was situated on the second floor. The plaintiff Canning, whose principal business was that of selling automobiles, enlarged this theatre, constructing a balcony, converting the show rooms into a lobby, rebuilding the entrance, and laying a cement floor. New seats to the number of 272 were installed on this floor, and the old seats, 127 in number, were removed to the gallery where they were equipped with slip covers and foot rests.

The policies were written by an agency in Lancaster. This agency maintained a sub-agency in the Pratt building and on the same floor with the theatre. The agent who solicited and procured the insurance had had nine years' experience in the insurance business and was a partner in the Lancaster agency. He visited the sub-agent in Whitefield a great many times while the theatre was being reconstructed. He knew that the changes were extensive, and was in the building once or twice a week during the progress of the work. He testified that in cases of co-insurance the agent has "to determine the actual value in improvements and betterments" and that in determining this value "We use our own judgment as far as we can and we also rely on the statement made by the applicant." The plaintiff Canning denied ever making any statement regarding value to the agent, and said, "He asked me if ten thousand dollars ... would be enough and I told him it was all I wanted to pay for."

The policies as written covered "the assured's interest in improvements and betterments in the building consisting chiefly of seats and building alterations." Each policy contains the usual provision that "if the assured shall make any attempt to defraud the Company, either before or after the loss," the policy shall be void.

The defendants do not question the sufficiency of the evidence to sustain the finding that Canning did not obtain his insurance fraudulently, and the alleged attempt to defraud on which they now rely consists mainly in statements made by Canning on the witness stand during the trial. They argue that in spite of his professions of good faith and with every allowance for his inexperience and extra expenditures, his testimony conclusively shows that he did not entertain "an honest belief that he had expended $10,000 or anywhere near

that amount on the work which he did." See *Moreau* v. *Insurance Co.*, 84 N. H. 422, 423, and cases cited.

The finding of $5,850 as the amount of the plaintiffs' loss does not of course represent the full value of the betterments and improvements, since that finding is based on the further finding that the loss was only partial. The evidence relating to the extent of the damage is conflicting. The defendants claimed at the trial that there was practically no damage to the plumbing fixtures and heating equipment in the lobby and none to the ramp leading from the lobby to the theatre entrance, that the damage to the ticket booth and toilet room was slight, and that the only damage to the cement floor was "a couple of blisters." No question as to the extent of the salvage, if any, was submitted to the jury. Consequently the finding of $5,850 as damages to an unspecified portion of the insured property has no such significance as had the finding of value in *Saidel* v. *Society*, 84 N. H. 232, 235. The defendants' contention "that the amount of the verdict conclusively establishes an attempt to defraud" (the third ground of the motion to set aside the verdict) is therefore untenable.

Suit was brought to recover the entire amount of the insurance on the ground that the plaintiffs had suffered a total loss. There was evidence to substantiate this claim. The fire caught from an oil stove in the hallway and burned rapidly. Two contractors who examined the ruins testified that in their opinion there was no salvage of any value whatever. The nature of the fire, the time required to extinguish it, and the appearance of the ruins were circumstances which would have justified a finding that Canning believed the theatre to be totally destroyed. And if this were true, he might reasonably conclude, even if ignorant of the law relating to valued policies (P. L., c. 276, s. 8; *Tomuschat* v. *Insurance Co.*, 77 N. H. 388, 390), that proof of initial cost was not imperative. Hence his delay in making an inspection of the ruins for the purpose of ascertaining the extent of the damage and his failure to obtain accurate figures showing his investment did not amount to attempted fraud as a matter of law.

It is true that the definite items of cost which Canning enumerated on cross-examination did not equal $6,000. But he testified that all his accounts and papers were destroyed in the fire, that he was not a bookkeeper and that he had made no attempt to verify the amounts which he had paid out; that, exclusive of the contract jobs, he had employed day laborers ("sometimes as high as five or six") to work on the theatre from the early part of January to the last of March,

and that while he had "no way of knowing exactly," he believed that it cost him approximately $10,000 to make the improvements and betterments in question. He said: "I haven't got any figures and I don't remember all those things and I didn't keep any special track of them and it's very hard to tell. There is always any number of things . . . I was going to tell you how I figured it . . . I know how much money I borrowed and how many cars I sold and it all went in there . . . into that building and theatre."

Nor is this testimony entirely without corroboration, since the agent who solicited the insurance visited the building frequently, saw "men working around there all the time," recognized the work as "a considerable size operation," and, fully understanding that it was his duty "to determine the actual value" of the improvements and betterments, issued the policies for the total sum of $10,000. The jury were not obliged to believe his statement that the policies were issued on Canning's representation of value.

The fact that the estimates of reproduction cost did not exceed $7,000 is not controlling. There was evidence that Canning was not economical in some of his methods of work. His attempt to fasten the theatre seats to the cement floor is an instance in point. He believed he could save money by doing this himself but discovered in the end that installation by the seller would have been much cheaper.

His claim to insurance for all seats in the theatre was not necessarily fraudulent. The old seats, though owned originally by Pratt, were "built over" by Canning and made a part of the new theatre. The definition of "improvements and betterments" is not so widely known to laymen that Canning must be deemed as a matter of law to have understood that these seats were not covered by the policies.

Since fraud "must be clearly established by proof" and "will not be implied from doubtful circumstances which only awaken suspicion" (*Jones* v. *Emery*, 40 N. H. 348, 350), we are not prepared to say that the only reasonable inference to be drawn from the evidence is that Canning attempted to defraud the defendants after the loss.

It follows that the motions for nonsuits and directed verdicts were properly denied. The third ground of the motion to set the verdict aside has been disposed of already, and there is nothing for this court to consider on the other questions raised by the motion. *Bennett* v. *Larose*, 82 N. H. 443.

*Exceptions overruled.*

BRANCH and PAGE, JJ., did not sit: the others concurred.