L. S. WAITE, d/b/a The Waite Oil Company, Plaintiff and Appellant, v. STANDARD ACCIDENT INSURANCE CO., Defendant and Respondent.

No. 9444.

Submitted May 15, 1957. Decided September 30, 1957.

315 Pac. (2d) 984.

Mr. Floyd O. Small and Mr. Clayton R. Herron, Helena, for appellant.

Mr. Newell Gough, Jr., Mr. Enor K. Matson and Mr. A. W. Scribner, Helena, for respondent.

Mr. Herron and Mr. Scribner argued orally.

MR. JUSTICE ANGSTMAN:

This is an appeal by plaintiff from a judgment entered in favor, of defendant after its general demurrer to the complaint was sustained, and plaintiff elected not to amend the complaint.

Hence the sole question is whether the complaint states facts sufficient to constitute a cause of action. It contains two causes of action. It is based upon an indemnity bond issued by defendant calculated to indemnify plaintiff against loss as a result of fraud or dishonesty of plaintiff's employees and "commission station agents."

The provision of the bond relied on by plaintiff here reads:

"In consideration of an agreed premium, the Standard Accident Insurance Company * * * hereinafter called Underwriter, hereby agrees to indemnify L. S. Waite Doing Business As Waite Oil Company of Butte, Montana, hereinafter called Insured, against any loss of money or other property, real or personal (including that part of any inventory shortage which the Insured shall conclusively prove has been caused by the fraud or dishonesty of any Employee or Employees) belonging to the Insured, or in which the Insured has a pecuniary interest, or for which the Insured is legally liable, or held by the Insured in any capacity whether the Insured is legally liable therefor or not, which the Insured shall sustain and discover as provided in Section 2, the amount of indemnity on each of such Employees being Two Thousand Five Hundred and no/100....Dollars ($2,500.00) through any fraudulent or dishonest act or acts committed by any one or more of the Employees as defined in Section 3, acting alone or in collusion with others, during the term of this bond as defined in Section 1."

Each cause of action alleges that on or about June 1, 1951, plaintiff employed Orlo T. Jatzeck as commission station agent to sell petroleum products and automobile accessory products at Lincoln, Montana; that it was understood that the products would be located by plaintiff on or near the property of Jat-

zeck at Lincoln, and that the products were to remain the property of plaintiff until sold by Jatzeck, who should then account to plaintiff for such products sold. Paragraph VI of each cause of action reads as follows:

"That at all times mentioned herein and during the period specified above, the said Orlo T. Jatzeck was acting on behalf of the plaintiff as the Agent of the Plaintiff in the capacity of Commission Station Agent, while in the possession of money and property belonging to the plaintiff."

In the first cause of action it is alleged that beginning about June 1, 1951, until about November 4, 1952, Jatzeck accounted for a portion of the products sold but as to the remainder he "wrongfully and dishonestly failed, and does still wrongfully and dishonestly fail, to account for the cash money he received or should have received, in return for the products sold to others on behalf of the plaintiff as aforesaid. That the said Commission Station Agent, Orlo T. Jatzeck, thereby wrongfully and dishonestly appropriated said cash money to his own use and does still wrongfully and dishonestly retain the same for his own use. That the cash money so appropriated amounted to the sum of $2,240.56. That the plaintiff herein has thereby sustained a loss of $2,240.56 as a result of the wrongful and dishonest acts of his aforesaid Commission Station Agent, Orlo T. Jatzeck."

The second cause of action alleges that between June 1, 1951, and November 4, 1952, plaintiff located petroleum products and automobile accessory products on the property of Jatzeck and that he as commission station agent "removed or caused to be removed" such products; that Jatzeck accounted in cash for a portion thereof, but as to the remainder he "wrongfully and dishonestly failed to account * * * either in cash or otherwise for the products so removed"; that he "wrongfully and dishonestly appropriated the remainder of the products so removed to his own use"; and that the value of the products so appropriated was $2,240.56, for which judgment was sought.

"The terms 'fraud' and 'dishonesty' include any acts which

show a want of integrity or a breach of trust.'' 45 C.J.S. Insurance, section 802, pages 850, 852; Exeter Banking Co. v. Taylor, 85 N.H. 458, 160 A. 733.

It is generally held that mere. failure to account would not imply fraud or dishonesty within the meaning of a bond covering fraudulent and dishonest acts. There is however a difference of opinion on that question. The Supreme Court of New Jersey in Ex parte Clark, 20 N.J.L. 648, 650, 45 Am. Dec. 394, 396, discussed the meaning of fraud and dishonesty as follows:

''The argument upon this point went upon the ground, that there was nothing fraudulent, in a man's having money or property in his own possession, or in the possession of another for his use and subject to his control, and yet refusing to appropriate it to the payment of his honest debt. I am not prepared however to concede what is assumed in this argument. I think it one of the most dishonest things a man can be guilty of, to refuse to pay his honest debts, when he has the means to do so. Whatever is *dishonest* is *fraudulent in foro conscientiae* and is so treated in a court of equity. Fraud and dishonesty are synonymous terms. * * *

''* * * if he acts *unjustly and unlawfully,* he acts *fraudulently;* an unjust man is a fraudulent one.''

Here the allegations go beyond a mere failure to account. It is alleged that the money and property converted by Jatzeck belonged to plaintiff. In addition to the duty to account there is alleged the wrongful conduct of Jatzeck in appropriating plaintiff's money and property to his own use. It is not alone a case of mere failure to account pursuant to an agreement or understanding between the parties.

A case very similar to this is that of National Surety Co. v. McCutcheon, Tex. Civ. App. 1925, 270 S.W. 1062, 1063. There a surety assumed liability for dishonesty or fraud on the part of an insurance agent as to premiums collected by the agent. The facts were not in dispute; they were agreed to. In substance the agent collected premiums which he did not transmit

to the company. The court in holding that there was liability under the bond said:

"The contention of appellant, in substance, is that inasmuch as it was the custom of Jack Price to charge on the books kept by him premiums due his principal and credit himself with commissions earned, making remittances at stated intervals, the relation between Price and his principal was that of debtor and creditor, and that his mere failure to account to his principal for the said sum of $1,648.74 due it did not constitute dishonesty or fraud, but, on the contrary, amounts to no more than mistake, negligence, error of judgment, or breach of contract, and that therefore the appellant was not liable under the terms of its bond.

"The rule of law that a surety is not to be held beyond the terms of his contract is too well settled to require the citation of authority. But in the agreed statement of facts before us we find no explanation of Price's failure to account to his principal for the premiums due it. If in fact he became insolvent or because of some calamity was unable to make remittances between the time he collected the premiums and the time when, in accordance with his custom, he was required to make remittances, it is not shown by the agreed statement of facts. In other words, his failure to remit is wholly unexplained and the question is: Does that unexplained failure to remit amount to 'fraud or dishonesty', within the meaning of the terms of appellant's bond? In the absence of an explanation, the inference seems plain that he converted the premiums to his own use or to the use of some other person. * * *

"So here we think it must be held that the premiums collected by Price and due his principal, the Bankers' & Shippers' Insurance Company, undoubtedly constituted a trust fund and good faith on his part required him to remit such fund to his principal, and an unexplained failure to so do certainly amounted to wrongdoing. * * *

"We conclude from the agreed statement of facts before us that the trial court properly held that the unexplained failure

of Price to remit to his principal, the Bankers' & Shippers' Insurance Company, the premiums collected by him and due that company, amounted to fraud and dishonesty within the meaning of the indemnifying bond given by appellant in this case * * * .''

Fraud and dishonesty are much broader terms than embezzlement or larceny. United States F. & G. Co. v. Egg Shippers' Strawboard & Filler Co., 8 Cir., 148 F. 353, and must be "taken most strongly against the surety company." City Trust, Safe Deposit & Surety Co. v. Lee, 204 Ill. 69, 68 N.E. 485; Citizens' Trust & G. Co. of West Virginia v. Globe & Rutgers Fire Ins. Co., 4 Cir., 229 F. 326, 330. And see Montana Auto Finance Corporation v. Federal Surety Co., 85 Mont. 149, 278 Pac. 116; Duel v. National Surety Corp., D.C., 64 F. Supp. 961; Fidelity & Deposit Co. of Maryland v. Bates, 8 Cir., 76 F. (2d) 160, and the bond must be construed to accomplish the purpose for which it was made. Union Electric Co. v. Lovell Livestock Co., 93 Mont. 577, 20 Pac. (2d) 255; Aetna Casualty & Surety Co. v. Commercial State Bank, D.C., 13 F. (2d) 474; American Surety Co. v. Pauly, 170 U.S. 133, 18 S. Ct. 552, 42 L. Ed. 977.

In Maryland Casualty Co. v. American Trust Co., 5 Cir., 71 F. (2d) 137, 138, the court said:

"Insurance against dishonest acts is insurance of fidelity; it is intended to, it does, guarantee openness and fair dealing on the part of the bank's officers. It is intended to, it does, underwrite that the bank's officers shall act with common honesty and an eye single to its interests."

Defendant contends that the allegations of the complaint are conclusions of law, and in reliance on Crenshaw v. Crenshaw, 120 Mont. 190, 182 Pac. (2d) 477, and Emery v. Emery, 122 Mont. 201, 200 Pac. (2d) 251, contends that the demurrer was properly sustained.

There can be no doubt about the fact that allegations of conclusions of law present no issuable facts, but the difficulty in a given case is to distinguish between conclusions of law

and ultimate facts. The allegations, that Jatzeck "wrongfully and dishonestly" appropriated said cash money, in the first cause of action, and the remainder of said products in the second cause of action to his own use, are allegations of ultimate facts.

Even a charge of larceny as bailee may be drawn substantially in the language of the statute, R.C.M. 1947, section 94-2701; State v. Lake, 99 Mont. 128, 43 Pac. (2d) 627; State v. Brown, 38 Mont. 309, 99 Pac. 954, provided it is alleged that the thing appropriated to the use of the alleged wrongdoer was done "feloniously." State v. Allen, 34 Mont. 403, 87 Pac. 177. For the greater reason the allegation of wrongful and dishonest appropriation of money and property belonging to plaintiff is sufficient on which to predicate civil liability.

Here it is alleged that the money and property was appropriated to the use of Jatzeck "wrongfully and dishonestly." These are allegations of ultimate facts.

In Remillard Brick Co. v. Dandini, 47 Cal. App. (2d) 63, 117 Pac. (2d) 432, 434, it was held that allegations of "fraudulent misappropriations, misconduct, and mismanagement of the affairs" of a corporation were not conclusions of law but direct allegations of material facts. And it has been held that an allegation that an act was "negligently" done is not a conclusion of law, but one of fact. Lowe v. Miller, Ky. C.A. 1907, 104 S.W. 257.

In Babcock v. Gray, 165 Or. 398, 107 Pac. (2d) 846, 848, it was held that an allegation that plaintiff's injury was caused by the negligence of defendant and that the negligence consisted of the act of "recklessly, carelessly, negligently and unlawfully driving a motor vehicle upon a highway in a manner carelessly and heedlessly and in wilful and wanton disregard of the rights and safety of others and without due caution and circumspection, and at a speed and in a manner so as to endanger the person and property of others" was not subject to the charge of being conclusions of law. See to the same general effect Johnson v. Herring, 89 Mont. 156, 295 Pac. 1100.

In Indemnity Co. of America v. Bollas, 223 Ala. 239, 135 So. 174, it was held that an allegation that a liability insurer ''wrongfully withdrew'' after taking charge of a defense for the insured was not a conclusion of law.

But if we disregard the adverbs ''wrongfully and dishonestly'' as used in the complaint as some courts do (Compare 71 C.J.S., Pleading, section 19, page 50), the allegation that Jatzeck appropriated the money and products to his own use was a sufficient statement of an ultimate fact implying dishonesty to constitute a cause of action. The rule is that whatever is necessarily implied by, or reasonably inferred from an allegation must be taken as directly alleged. Marcellus v. Wright, 51 Mont. 559, 154 Pac. 714; Grant v. Nihill, 64 Mont. 420, 210 Pac. 914; Clem v. Clem, 97 Mont. 570, 36 Pac. (2d) 1034; Johnson v. Johnson, 92 Mont. 512, 15 Pac. (2d) 842.

The complaint, which must be liberally construed with a view to substantial justice between the parties (section 93-3801), states facts sufficient to constitute a cause of action.

The judgment appealed from is reversed and the cause remanded with directions to set aside the order sustaining the demurrer and to enter an order overruling the demurrer to the complaint and defendant to be allowed a reasonable time to further plead.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES CASTLES and BOTTOMLY, concur.

MR. JUSTICE ADAIR, specially concurring.

The complaint herein sets forth sufficient ultimate facts to constitute two good separate causes of action which, if proven, will entitle the plaintiff to the relief demanded to the measure of the damages shown within the limits of the bond pleaded.

The causes of action being sufficient and properly pleaded were and are proof against the defendant's general demurrers, and it was reversible error for the trial court to allow such demurrers and to enter judgment for the defendant. See 2 Ban-

croft's Code Pleading, sections 1009, 1010 and 1011 at pages 1526-1531 and Form Nos. 425, 426 and 427 at pages 1592-1594. Compare Form No. 2246 at pages 1552 and 1553 of 2 Hillyer's Annotated Forms of Pleading. Also see 5 Am. Jur., Pleading & Practice Forms, Annotated, pages 169-170 and Forms Nos. 5:331 and 5:332.

I concur in the reversal of the judgment.